CENTRAL OF GEORGIA RAILWAY CO. *v.* GOODMAN.

1. The refusal to grant a nonsuit was not erroneous.

2. A refusal to instruct the jury in accordance with a correct request, duly made in writing and peculiarly appropriate to the facts of the case, is, when the refusal probably resulted in harm to the party making such request, cause requiring the grant of a new trial, though the court gave in charge an abstract principle of law covering the request.

Argued November 23, — Decided December 14, 1903.

Action for damages. Before Judge Reagan. Spalding superior court. February 28, 1903.

*Hall & Cleveland* and *Robert L. Berner*, for plaintiff in error.
*Robert T. Daniel* and *Marcus W. Beck*, contra.

FISH, P. J.   J. B. Goodman, as next friend of the minor children of A. B. Goodman, brought an action against the Central of Georgia Railway Company, for damages, for the homicide of the father of such children, alleged to have been caused by the negligent running of the cars of the defendant company.   Upon the trial the contentions of the plaintiff were, in substance: that the deceased went, at night, to Pomona, a flag-station on the defendant's road, to board a regular suburban passenger-train, to go to Griffin ; that the usual stopping-place at that station for taking on and discharging passengers was where a public highway crossed the defendant's track; that a companion of the deceased, when they saw the train approaching the station, got on such crossing and with a lantern gave the proper and usual signal for the train to stop ; that, notwithstanding such signal could have been seen by the servants of the defendant in charge of such train in ample time to stop it at the crossing, they negligently failed to do so, but ran it by at the rate of twenty or thirty miles an hour, and stopped it some forty or fifty yards beyond the crossing ; that the train remained stationary a sufficient length of time where it stopped to induce the deceased to believe that it was waiting for him to board it at that place; that accordingly he and his companion started to the train, his companion, with the lantern, walking on the side to the right of the track and the deceased walking on the track, for the reasons that the side where his companion walked was obstructed by numbers of loose cross-ties, placed there by defendant, and on the side to the left of the track there was a gully and side-track, the spaces between the cross-ties of which had not been filled, and that as deceased had no light he could not safely walk on either side of the main track ; that as the deceased reached the rear end of the train he stepped to the left side of the track and caught hold of the handle bars of the steps " of the rear coach, to board the train ; that no employee of the company was there to look out and give warning, and that, just as he took hold of the handle bars, the train, without any signal or warning whatever, suddenly started back, knocking him in front of the rear trucks, running over him, and inflicting upon him such injuries as caused his death ; and that the deceased was entirely

without fault. The defendant's contentions, in substance, were: that the signal to stop at the crossing was not given until the train was so near it that it was impossible to stop there; that the train ran only seventy-five or one hundred feet beyond the crossing before it stopped; that it remained stationary only about a second, when it slowly started back to the crossing; that none of the train crew knew where the deceased then was; that the conductor, who was on the platform between the two rear coaches, looked out and saw the light of the lantern which the companion of the deceased had, which appeared to be at the crossing; that the bell on the engine was rung before the train started back, and was continuously rung until after the deceased was run over; that there were no loose cross-ties on the side to the right of the track, and the side to the left and the side-track furnished as good and safe places to walk as did the main track; that the deceased never left the main track in order to board the train, but continued to walk on the main line right up to the rear of the train, without the knowledge of any of defendant's employees on the train; and that, when it started back, he was knocked down and run over on account of his gross negligence in voluntarily being in so dangerous a place. The defendant moved for a nonsuit, and excepted, pendente lite, to the overruling of this motion. There was a verdict for the plaintiff. The defendant moved for a new trial on numerous grounds, which was refused. The case is here by a bill of exceptions sued out by the defendant, complaining of the overruling of the motions for a nonsuit and for a new trial.

1. We have carefully considered the evidence submitted in behalf of the plaintiff, and conclude that it was sufficient to make a case for the jury to pass on, and hence the court did not err in refusing to grant a nonsuit.

2. Error was assigned in the motion for a new trial upon the refusal of the court to charge the jury, as duly requested in writing, that the fact that the defendant's train ran by the regular stopping-place would not authorize the plaintiff to recover. Among the allegations of negligence set out in the petition were the following: "(14) That said defendant company was negligent in failing to stop at said station. (15) That said defendant company was negligent in failing to heed and observe the signals to stop at said station, and in failing to stop in response to the

same. (16) Defendant company was negligent in running by said station at the high rate of speed and in running by said station at all." Both sides introduced evidence as to how far the engineer could see the signal to stop at the crossing before the train reached it, and also as to the rate of speed of the train when it passed the crossing. The court in its charge, while stating the contentions of the plaintiff, said : " Several specific acts are set out in the petition, which the plaintiff claims are acts of negligence." The court did charge that it was for the jury " to say whether the acts and conduct of the defendant company's agents in this case were acts of negligence, and whether or not the injury of Mr. Goodman resulted from these acts of negligence." And, later on, the court instructed the jury: " if they [those in charge of the train] were negligent, and he [the deceased] could not have avoided the injury to himself by the exercise of ordinary care and diligence, the plaintiff would be entitled to recover, if the negligence of the defendant company was the proximate cause of the injury. If it was not, then [he] could not recover." If the jury believed from the evidence that the defendant company was negligent in failing to stop its train at the regular crossing, though it was a public crossing, such negligence did not authorize the plaintiff to recover, because the deceased was not injured upon the crossing and his injury was not the natural and probable consequence of the failure of the train to stop there. The request, therefore, under the circumstances of the case, was peculiarly appropriate and should have been given, unless it was sufficiently covered by the general charge. It was not so covered, unless it was so done in the extracts we have quoted therefrom. The last of such extracts stated the abstract legal proposition that covered the request, and would have been so understood by those knowing the legal signification of the phrase "proximate cause;" but while jurors are presumed to be men of intelligence, we can not assume, especially in view of some of the allegations of negligence contained in the petition and the evidence relative thereto submitted by both sides, that the jury had clearly in mind the proper legal meaning of the phrase "proximate cause." It follows, we think that the request should have been given, and as the refusal to give it may have resulted in serious harm to the defendant, it was cause requiring the grant of a new trial. *East Tenn., Va. &*

*Ga. Ry. Co.* v. *Smith,* 91 *Ga.* 176; *Roberts* v. *State,* 114 *Ga.* 450, and cases cited.

The other grounds of the motion for a new trial do not require special consideration. Some of the questions made are not likely to arise upon another trial. Two of the requests to charge do not appear to have been made in writing, and two others, set out in the tenth and eleventh grounds of the motion for a new trial, in effect stated that certain specified acts on the part of the deceased would amount to negligence.

*Judgment reversed. All the Justices concur.*