## 20951. CITY ICE DELIVERY CO. *v.* TURLEY.

DECIDED JULY 14, 1931. REHEARING DENIED SEPTEMBER 17, 1931.

*Brandon & Hynds, Frank C. Tindall, B. Hugh Burgess,* for plaintiff in error.

*McClelland, Savage & Crawford,* contra.

LUKE, J. Mrs. Louise Turley brought suit against the City Ice Delivery Company for the homicide of her child, caused by its being run over by a truck of the defendant company. She alleged that she was a widow and had exclusive control of the child, was entitled to the services of the child, and worked every day to earn a livelihood; that the child was four years of age and well developed physically and mentally; that the child performed valuable service in assisting in the keeping of the home and the usual tasks in and about the home; that she went upon errands for petitioner and rendered such other services as children may render for a parent; that such services were necessary for the proper maintenance of the home, and that the plaintiff and her deceased child

were mutually dependent upon each other for services which each rendered; that such services of the child were worth $5 per week, and "that as said child grew older said services and the earning capacity of said child would have increased until they would have reached a maximum of $25 per week or more prior to the said child's majority;" that at the time the truck of the defendant company hit the child it was loaded with 4500 pounds of ice, was running at a reckless rate of speed of 25 to 30 miles an hour, at a point where traffic is extremely heavy, where 20 to 30 people were standing on the sidewalk and in the street waiting for the street-car, and that the driver of the truck failed to have it under control, and to blow any horn, or give any warning of his approach; and that such conduct on the part of the driver constituted gross negligence and wantonness, and was the direct and proximate cause of the homicide. Petitioner alleged that in addition to actual damages for loss of services and for funeral expenses, she is entitled to punitive damages on account of the gross and criminal negligence of the defendant.

Defendant denied liability and alleged that the damage sustained was due to the negligence of the plaintiff and of the deceased child; and demurred to specified portions of the petition on the ground that they were conclusions of the pleader, unsupported by facts, and demurred to the paragraph seeking punitive damages, because no facts are alleged which would authorize such a recovery. The demurrer was overruled and the defendant excepted pendente lite, and upon such exceptions assigns error in its bill of exceptions.

The trial resulted in a verdict and judgment for the plaintiff in the sum of $8,000; a motion for a new trial was made and overruled; and on this ruling the defendant assigns error.

■ The allegations of the petition were sufficient to show actual and punitive damages, and the court did not err in overruling the demurrer. The mortality and annuity tables were introduced in evidence, and proper instructions in regard to them were given by the court, to enable the jury to ascertain the expectancy and earning capacity of the child. The tender years of the child necessarily limited her contribution of services to her mother prior to the child's death, and there was evidence introduced by the defendant company tending to show that said defendant company was in nowise responsible for the death of the child. But there was

also evidence that the child did contribute "substantially and materially" to the support of its mother, and evidence that the servant of the defendant company was negligent and that such negligence was the proximate cause of the death of the child. These are distinctly questions of fact for the jury, and, in view of the conflicting testimony, this court is powerless to disturb their findings as to these issues of fact. The mother testified that "in the way of assisting me about the house this child was capable of rendering service and did actually render service. . . If I wanted anything from next door I could send Mildred [the deceased child] and she always went and did what I told her, and when I came in tired from work, if I wanted a broom from another room, Mildred was always ready to bring it in for me, and she would bring in kindling in the morning when I would be getting breakfast and getting ready to go to work. When I went to make up my bed she would lay one side of the cover over while I laid the other. She always put her pillow on as I put mine. That service was worth something to me. It saved me many steps. My work is the kind that tires me physically, and I was on my feet most all of the day, and she would do these things to help me in the evenings when I was tired, as well as in the mornings before I went to work. My best judgment as to what would be a reasonable value for the services of the child in helping me look after the home and in helping me . . I would say $4 a week to me, what the child did. Except the two of us, neither one of us had anybody to support us except each other, not at all. What I earned went into the support of the home, the maintenance, and what work she, the little girl, did, what service was rendered by her was done in the home for the same purpose. . . She went to get anything for me, anything I needed to borrow from next door. . . She would run errands for me before I went to work in the mornings if I needed anything. . . We got milk about three houses down the street and I sent Mildred down there for the milk. . . If I wanted to order over the telephone from the store, I would give Mildred a little note; and if it would not be but one or two things, I only told her, and she could tell exactly what mother wanted." The credibility of this testimony was entirely for the jury. In the light of this testimony and the authorities herein-

after cited, the jury had a right to determine the value of the child's services at the time of its death.

As to the negligence of. the defendant, there was evidence that "the *front* fender struck the side of her face, crushing her cheek-bone; it knocked her little face one-sided. . . I did not hear any horn or any other kind of warning before the impact. . . I could see the child in *front* of the truck. The position of the child when the truck came together, according to the way I saw it, was that the child was in front of the truck. . . When I first put eyes on the truck was when the truck dashed right past me. . . The truck dashed by me just like that. . . I did not hear any horn or any other sound made by the truck before it got right where the crowd was standing. . . That truck never slacked its speed or changed its speed any as it passed me. It went like that (indicating), because it scared me. . . There was a good crowd, as there usually is a good crowd there. . . The truck, from the time it passed me until he hit the little girl, didn't reduce his speed at all. . . From the noise, it sounded to me, it increased its speed, . . the truck was speeding along at an unusual speed. . . I could tell from the sound of the motor that it did pick up speed. The part of the truck that hit the little girl . . was the front fender, about where the running board connects. . . I did not hear any horn. As to whether the child ran into the truck at that point, *the truck hit the child.* . . I was right there where it hit the child. What causes me to say that the truck hit the child, rather' than the child hitting the truck, was because it did. . . My best judgment of the speed of that car, that it was going just before it struck that little child, is 25 miles an hour. . . I never heard any horn or any signal by the truck." (Italics ours.) The driver admitted that there was a "crowd of 30 or 40 or 50 people standing around there waiting to catch a street-car," and that he "did not blow any horn," that he "had 4500 pounds of ice on the truck," and that he "hit this place going between 15 and 20 miles per hour." Under this evidence the jury had a right to say that the defendant company was negligent, and that such negligence was the proximate cause of the homicide; and this court can not invade the province of the jury. The great weight of the truck, which was loaded to capacity, would make it harder to stop, and more dangerous if it

failed to stop and struck some one. Driving such a truck, at the speed indicated by the evidence, toward a crowd of from 30 to 50 people, and failing to give any warning of approach are all circumstances to be considered by the jury. The jury might properly conclude that even a child the age of the deceased would have probably looked around had the driver of the truck blown his horn in time to warn her. In the 3d headnote in the case of *O'Dowd* v. *Newnham*, 13 *Ga. App.* 220 (80 S. E. 36), it was said that "in considering whether the operator of an automobile exercised due diligence, or, by failure to exercise due diligence, was guilty of negligence, the character of the instrumentality which he operated, and the danger attached to its operation if properly used, as well as the character of the highway being traversed, and the probability of inflicting injury if all needed care was not used in the operation of the machine, are all to be taken into account."

Counsel for the plaintiff in error say in their brief that "the ground of the motion for a new trial that the verdict is decidedly and strongly against the weight of the evidence will not be urged here." The special grounds of the motion for a new trial need not be dealt with at great length.

■ "A mother may recover for the tortious homicide of her child upon whom she is dependent either wholly or in part and who contributes substantially or materially to her support. . . In such a case the mother 'may recover the full value of the life of the deceased, as shown by the evidence . . without deduction for necessary or other personal expenses of the deceased had he lived.' . . The contribution of the child as contemplated by the statute may be either in money or labor." *Savannah Electric Co.* v. *Thomas*, 30 *Ga. App.* 405 (118 S. E. 481); Civil Code, § 4425; *Fuller* v. *Inman*, 10 *Ga. App.* 680 (74 S. E. 287). Under this ruling there is no error in the excerpt from the charge complained of in ground 4 of the motion for a new trial.

■ Ground 5 of the motion for a new trial complains that the court charged that "the contribution need not be in money or some other substantial manner." This was clearly a lapsus linguæ, and, as shown by the context and other portions of the charge, the court intended to say that the contribution need not be in money if in some other substantial manner. The error did not mislead the jury.

■ The use of the word "cause," instead of "proximate cause," in referring to the alleged negligence of the defendant, was not harmful to the defendant. In fact it might be reasonably contended that for the court to charge that the plaintiff must prove that the defendant's alleged negligence was the "cause" of the injury, held her to a more strict degree of proof than would be required to prove "proximate cause." This disposes of the 6th ground of the motion adversely to the plaintiff in error.

■ The 7th special ground complains that the court charged the jury that the child (who was 4 years and 20 days old) was not capable of being guilty of contributory negligence. There is no error in this charge. In *Crawford* v. *Southern Railway Co.*, 106 *Ga.* 870 (2) (33 S. E. 826), it was held that "a child only four and a half years old is incapable of being guilty of contributory negligence."

■ The court did not err in charging the jury, in substance, that the operator of a motor-vehicle, in approaching a dangerous place upon a street or highway, should give warning and should have the vehicle under control. This is the spirit and intent of the existing law of our State, and is essential to the welfare of the citizens of the State. The language of the charge, as set out in grounds 8 and 9 of the motion, did not mislead the jury, who had heard the evidence and necessarily understood the issues.

⌀ ■ The court charged the jury that the plaintiff could not recover unless the negligence of the defendant's servant was the proximate cause of the death of the plaintiff's child, and the complaint for failure so to charge as set out in ground 10 is without merit.

■ The court did not err in charging the jury that in determining the value of the child's services they could take into consideration the circumstances and living conditions of the family. See *Seaboard Air-Line Railway Co.* v. *Sarman,* 38 *Ga. App.* 637 (11) (144 S. E. 810). This disposes of ground 11 of the motion.

■ The court did not err in charging the jury that "If you believe the defendant's servant was negligent in any or all of ·the particulars charged, your next inquiry would be whether such negligence, if there was any, was the cause of the plaintiff's deceased child's death. If you believe there was such negligence, and you further believe that such negligence, if any, was the cause of the plaintiff's deceased child's death, then the plaintiff would have a

right to recover in the case, if not barred of the right of recovery by some legal reason," as alleged in ground 12 of the motion.

■ In the absence of a proper request to elaborate upon the meaning of "proximate cause" there was no error in the failure of the court to do so. The case of *Central Railway Co. v. Goodman*, 119 *Ga.* 237 (45 S. E. 969), cited by plaintiff in error, is not authority to the contrary; because the ruling there made related to the particular facts of that case; and there was a written request to charge, and the written request was not for the elaboration of the words "proximate cause," as will be shown by reference thereto. There is no merit in ground 13 of the motion.

■ Ground 14 of the motion for a new trial alleges that the court erred in qualifying the jury by asking them if they were in any way related to or employed by the City Ice Delivery Company, the Consumers Company, Atlantic Ice and Coal Company, Diamond Ice Company, or were stockholders in any of the companies; on the ground that it substantially informed the jury that the three last named companies had a financial interest in the case. The ground does not allege that the three last-named companies did not have any interest in the defendant company, the City Ice Delivery Company; but on the contrary, the ground itself and the brief of the plaintiff in error virtually assume this to be a fact, and the complaint is that the charge was "equivalent to notifying the jury that these companies had a financial interest in the suit." This being true, no juror who was financially interested in any of these three companies should have served in the instant case and thus passed upon his own financial interest; and the court did not err in thus qualifying the jury. Moreover, the record does not show that any juror disqualified because of these questions.

■ Grounds 15, 16, and 17 of the motion allege that the court erred in allowing in evidence a picture of the deceased child and the remark of the mother, "that is all I have left, is her picture and little grave out here in Decatur Cemetery." The picture was clearly admissible in evidence. Our courts have held that the value of a child's services may be determined from evidence as to the age and physical and mental development and precocity of the child. The evidence shows that the picture of the child was taken only six months before its death, and certainly a picture showing the physical development of the child and the features indicating its

intelligence would 'assist the jury in determining its ability and capacity to render service. That part of the remark of the mother which identified the picture as that of her deceased child was relevant, but the remaining portion of the remark was calculated to arouse the sympathy of the jury to a certain extent. However, the motion for a mistrial was not based on such remarks, but solely on the exhibition of the picture to the jury. The court did not err in refusing to declare a mistrial or a new trial on this ground.

■ In the argument of the plaintiff's counsel reference to opposing counsel as "an able and experienced corporation lawyer," as set out in ground 18 of the motion, furnished no cause for a mistrial or new trial.

■ Grounds 19 and 20 of the motion complain that the court, in instructing the jury with reference to their right to pass upon the credibility, deportment, interest, etc., of the witnesses, erred in failing to instruct them that "the jury may also consider the number of witnesses, though the preponderance is not necessarily with the greater number," and may "also consider the witnesses' intelligence and means for knowing the facts to which they testified." In view of the fact that several material facts are not in conflict, particularly that the servant of the defendant company was approaching a place where 25 or 30 people were congregated, that he approached such a congested place at a rate of from 15 to 20 miles per hour, in a truck loaded to capacity, 4500 pounds, and that he did not slack his speed or blow his horn or give any warning in approaching that place; and in view of the further fact that the court charged the jury, "You will determine for yourselves where the *greater weight* (italics ours) of it [the evidence] rests on any question you have, under consideration," which charge necessarily included the number of witnesses, and of the fact that counsel for the plaintiff in error say in their brief that they do not urge here "that the verdict is decidedly and strongly against the weight of the evidence," and of the fact that the court charged the jury that they might consider the deportment and manner of the witnesses on the stand, reasonableness or unreasonableness of their evidence, their opportunities for knowing the facts about which they testified, and the probability or improbability of the facts to which they testified, which necessarily in-

cluded a consideration of the "witnesses' intelligence and means for knowing the facts to which they testified," and in view of the fact that the plaintiff had five witnesses rather than a single witness, the court did not err as alleged in these two grounds of the motion.

■ The evidence, though conflicting, authorized the finding of the jury; no reversible error of law is shown; and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*