## 47792. ISOM et al. v. SCHETTINO et al.

EVANS, Judge. On February 29, 1968, around midnight, four Italian seamen were riding as paying passengers in a taxicab owned and operated by Yellow Cab Company of Savannah. The taxicab collided with a locomotive of the Georgia Ports Authority at a street crossing on the property of the Authority on the outskirts of Garden City, Georgia, near Savannah. One seaman was killed and the others were injured. Separate suits were filed by the mother of the deceased seaman, the three other seamen, and by the owner of the ship on which the seamen were employed. These suits named as defendants the Yellow Cab Company, its driver, and its insurer, Globe Indemnity Company, seeking compensation for the wrongful death, and for the injuries sustained by the seamen, and for expenses incurred by the shipowner as a result of the collision.

The defendants filed a third party complaint against Georgia Ports Authority and prayed contribution for all or part of the sums that may be adjudicated against them. The five cases were consolidated for trial; and in the course of trial Georgia Ports Authority moved for a directed verdict in its favor, which motion was granted. The whereabouts of two of the injured seamen were unknown, and upon their failing to appear at the trial, all defendants moved for a directed verdict as to them, which motions were granted.

Verdicts were returned by the jury in favor of the mother of the deceased seaman, the remaining seamen, and the shipowner.

Defendants filed their combined motions for new trial and for judgment notwithstanding the verdict. Said motions were denied, and the defendants appeal. *Held:*

1. The direction of a verdict is proper only when there is no conflict in the evidence as to any material issue, and when the evidence introduced, with all reasonable deductions, demands a verdict. Code Ann. § 81A-150 (a) (§ 50, CPA; Ga. L. 1966, pp. 609, 656; 1967, pp. 226, 237, 246, 248); *State Farm Mutual Auto. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878).

Did the facts of this case show no material issue as to the alleged negligence of the Georgia Ports Authority? Was it entitled to a directed verdict? In defendants' third party complaint the Authority is alleged to have been negligent in failing to exercise due caution and ordinary care; in failing to keep a clear lookout ahead; in failing to bring its engine to a stop when a collision appeared imminent; and in failing to reduce speed after it became apparent the taxicab would not stop for the crossing.

The evidence is in conflict as to the speed of the taxi driver in approaching the crossing. The taxi driver testified he stopped at the entrance gate of the Ports Authority (approximately 300 yards from the train crossing), started off in low gear, went immediately to high gear and then changed back to second gear to brake the car down for the crossing; that he was reducing speed, when someone in the rear seat tapped him on the head and he momentarily turned to see what was the matter, and his foot slipped off the brake and hit the gas pedal; at the time he again looked toward the road he was about 20 feet from the crossing with the train in front of him. He testified that he was driving approximately 25 miles per hour as he approached the crossing. The engineer of the locomotive testified differently, stating that the taxicab did not reduce speed as it approached the crossing, and that it was traveling from 45 to 50 miles per hour when at a distance of from 250 to 300 yards from the tracks. The engineer testified that he had reduced speed of the locomotive somewhat as it approached the crossing, and when he was about 40 feet from the crossing he realized the driver was not going to stop for the crossing and that he hit the emergency (brake) in about 35 feet. Upon impact, he did not immediately stop the locomotive but allowed it to slide a few feet forward because of the possibility of an explosion from the tanks on the engine. (It is a little difficult to reconcile his testimony here, as he had testified that the emergency brakes were applied about five feet before reaching the crossing and he never did testify that he released the

emergency brakes). As to the engineer's testimony and the testimony of the taxi driver, both the trial court and this court must construe the testimony most favorably toward the party opposing the motion for directed verdict. *Curry v. Durden,* 103 Ga. App. 371 (1) (118 SE2d 871).

Because the taxi driver testified that he had traveled this road many times before and was familiar with the presence of the tracks crossing the road at this point, the trial court refused to allow testimony as to whether or not there should have been markings on the pavement showing the approach to the crossing; and as to whether the crossing should have been protected by a flagman, crossing-gates, flares, or otherwise. The trial court also excluded the manual on Uniform Traffic Control Devices which shows the recommended warning signs of a railroad as an advance warning showing a yellow disc with black crossbuck and the letters "RR" in black, erected *350 to 770 feet in advance* of every railroad crossing even though there may be other signals, gates or flagmen, except at a minor siding or spur infrequently used. The trial court also disallowed evidence as to the necessity of a flagman or signalman; and refused to allow expert testimony as to the stopping distance of a taxi.

There has been a tendency by some courts to confuse the question as to warning signals at a railroad crossing. A crossbuck sign simply warns, "This is a railroad crossing." But a signalman, or crossing gates, or a bell, or wig-wag give an entirely different warning, to wit: "This is a railroad crossing, *and here comes a train right now approaching this crossing!"* The automobile driver may be familiar with the location of the crossing, in which event a crossbuck sign is not necessary. But what is often necessary is a warning that will tell him, *"Here comes a train right now!"* The appellate courts of Georgia have steadfastly held that it is for a *jury* to determine as to whether such warnings were necessary, and if so, what kind of warnings were necessary, the absence of which may be, *by the jury,* accounted negligence.

The foregoing evidence as to the failure to flag by flare (fusee), signalman, or gates which might be necessary at or near a street crossing to warn of the *running* of the trains should have been allowed in evidence. It is a question for the jury as to what signals or devices should be maintained at a railroad crossing. See *Central of Ga. R. Co. v. Barnett,* 35 Ga. App. 528, 531 (134 SE 126); *Central of Ga. R. Co. v. Leonard,* 49 Ga. App. 689 (4) (176 SE 137); *Southern R. Co. v. Garland,* 76 Ga. App. 729, 743 (47 SE2d 93);

*Sylvania Central R. Co. v. Gay,* 82 Ga. App. 486, 488 (61 SE2d 587).

Where the trial court excludes admissible and material evidence offered on behalf of plaintiff, it is error to direct a verdict against him. *Thompson v. Central of Georgia R. Co.,* 102 Ga. App. 5 (2) (115 SE2d 471); *Fountain v. Hagan Gas &c. Co.,* 140 Ga. 70 (2) (78 SE 423); *Proctor & Gamble Co. v. Blakely Oil &c. Co.,* 128 Ga. 606 (1) (57 SE 879). Thus, there was in this case a jury question made by the failure of the railroad to have certain signals or gates, or flares, or flagmen (the exact kind needed to be decided by the jury), at the crossing.

But there are other pertinent provisions of law to be considered on the question of directing a verdict for the third party defendant railroad. The negligence of the taxi driver was not imputable to his passengers, and ordinarily they would be entitled to recover. But if the taxi driver's negligence was the *sole* cause of the collision, thus eliminating any negligence whatever — even as little as 1% of the total negligence—as to the operation of the locomotive, the Ports Authority would not be liable. *Seaboard Air-Line R. v. Barrow,* 18 Ga. App. 261 (5) (89 SE 383); *Andrews Taxi &c. Co. v. McEver,* 101 Ga. App. 383 (5) (114 SE2d 145); *Scholle Atlanta Corp. v. Nealy,* 110 Ga. App. 775, 777 (140 SE2d 88), and cits.

Where one is injured by the concurring negligence of two tortfeasors, each is liable for the whole injury even though the other defendant may have contributed thereto in greater degree. *Wilson v. Ray,* 64 Ga. App. 540, 543 (13 SE2d 848). While it is not negligence per se to fail to operate a train *at such speed that it may be stopped before going over a crossing, a jury question is made as to whether such failure amounts to simple negligence* (not negligence per se). *Atlantic C. L. R. Co. v. Bradshaw,* 34 Ga. App. 360 (1) (129 SE 304); *Ga. Northern R. Co. v. Rollings,* 62 Ga. App. 138, 140 (8 SE2d 114); *Powell v. Crowell,* 63 Ga. App. 890, 892 (11 SE2d 918). Thus another jury issue was made in this case on the question of speed of the locomotive and the ability of the engineer to stop before reaching the crossing. A railroad company, after discovering a person traveling in an automobile is about to come upon the crossing, owes to that person some *special duty to exercise care to prevent injury to him at the crossing. Georgia, S. W. & G. R. Co. v. Lasseter,* 39 Ga. App. 393 (4) (147 SE 166). *Who but a jury* could decide whether such *"special duty"* had been complied with in this case? An engineer

is not entitled to assume in all cases that a person on a public crossing (or who is about to come upon a public crossing) will get off in time to escape injury; the duty is cast upon the engineer in such cases to observe reasonable diligence, both before he discovers the peril and after he discovers the peril, to prevent injury to the person at the crossing. *Ga. Midland & G. R. Co. v. Evans,* 87 Ga. 673 (3) (13 SE 580).

The trial court erred in refusing to allow the introduction of expert opinion evidence as to the stopping distance of the taxicab; in refusing to allow testimony as to the condition of the railroad crossing at the time of the collision and the absence of signals or warnings; in excluding the Uniform Traffic Control manual showing the required markings for railroad crossings; and in refusing to allow introduction of any evidence which might reflect upon whether or not the Georgia Ports Authority exercised ordinary care in the running of its locomotive engine over this crossing; and erred in directing a verdict in favor of Georgia Ports Authority.

2. Generally, where death results from negligence, the personal representative of such deceased person shall be entitled to recover for the funeral, medical and other necessary expenses resulting from the injury and death of the deceased person. Code Ann. § 105-1310 (Ga. L. 1952, pp. 245, 246); *Complete Auto Transit v. Floyd,* 214 Ga. 232 (3) (104 SE2d 208); *Southern R. Co. v. Neeley,* 101 Ga. App. 488 (114 SE2d 283); *Saunds v. Forsythe,* 112 Ga. App. 269 (1) (144 SE2d 926).

There is no authority under Georgia Law which gives an employer the right to sue for funeral expenses of his employee. Thus, we are not here concerned with rights that may arise under admiralty law, as this suit was not brought in admiralty. Therefore, we reverse the judgment as to La Pintada Compania de Navegacion, S. A., for funeral and other alleged necessary expenses connected with the death of the deceased seaman. It has not shown any right to sue for such expenses paid by it for the deceased seaman as against the tortfeasor and no authority for same is cited in its brief. See in this connection *Hill v. Shaw,* 62 Ga. App. 757 (9 SE2d 850). One may sue the proper party for the furnishing of necessaries, including funeral expenses; but he may not sue the tortfeasor. See *Humphreys v. Bush,* 118 Ga. 628 (45 SE 911); *Blue Ridge Park Nurseries v. Owen,* 41 Ga. App. 98 (4) (152 SE 485).

The shipowner cites Ware v. Cia de Navegacion Andes, S. A., 180

FSupp. 939, 945, for the proposition that it might request indemnity for the decedent's burial expenses under the authority of the Shipowner's Liability Convention of 1936, 54 Stat. 1693, 1699, Art. 7 , § 1, which was allowed in that case. But it was allowed there against the tortfeasor causing the death of the seaman as a part of the damages resulting to the shipowner because of the *contractual relationship, either express or implied,* whereby the alleged tortfeasor was to perform the work in a reasonably safe and workmanlike manner, but did not, and the shipowner sustained certain damages, including the funeral expenses. Such expenses were expressly denied therein under the Virginia wrongful death statutes although the death of the seaman occurred as a result of the negligence of the company operating the equipment which caused his death. This case is not in point here, as there is no contractual relationship or implied warranty whereby the shipowner was damaged by a failure of defendants to perform properly thereunder.

3. It appeared from the evidence that the defendant taxicab company was a common carrier under Code Ann. § 68-612 (Ga. L. 1931, pp. 199, 203; 1937, pp. 730, 731) and not merely an operator of taxicabs within the city limits under Code Ann. § 68-602 (b) (Ga. L. 1931, pp. 199, 212; 1958, p. 688; 1964, p. 297). The court did not err in refusing to limit its liability to $10,000 under an alleged required policy of the City of Savannah. No proof of coverage under the policy was offered at the trial. The amount of such indemnity insurance is determined by the Georgia Public Service Commission, and no proof of the amount of said liability has here been shown. See Code Ann. § 68-509 (Ga. L. 1937, pp. 727, 728). There is no merit in the contention of the defendant Globe Indemnity Company that its liability should have been limited to $10,000, and that it should have been dismissed as a defendant.

4. The mother of the deceased testified that he was 24 years old; that he was a graduate of the Nautical Institute of Naples and was an officer who had been at sea continuously for three years; he was not married, and was the sole means of plaintiff's support; and that he earned more than $4,140 per year, not including subsistence. Her familiarity with his earnings included her knowledge of funds he had given her monthly by money order, ranging from 280,000 to 380,000 lira. It was proven by expert testimony that 623 lira to 581 lira was equal to $1.

The charge of the court authorized the jury to adopt any accurate

method it saw proper to determine and ascertain how much the son would receive throughout his life, making due allowance for the uncertainties in business, employment, aging, ability to work, taking into consideration also age, experience, health, habits, surroundings, manner of living, as shown by the evidence, and then determine, as well as it could, exercising common sense, observation and experience, how long he would have lived, and multiply it by the amount of his annual earnings to get the gross value of his life which would be reduced to its present cash value, according to the table provided. The above charge was based on evidence, and was sufficient to authorize the jury to determine the value of the son's life, as reflected by the verdict returned in favor of the mother.

(a) While there was no testimony as to his actual wages, there was ample proof as to his earnings within the mother's actual knowledge. See *Western & A. R. v. Moore,* 94 Ga. 457 (1) (20 SE 640).

(b) The court did not charge on wages, but charged on earnings, as disclosed by the evidence.

(c) The charge on the whole value of the defendant's life took into consideration his labor habits, and probable loss of employment, age and health, his circumstances and living conditions; hence, under the evidence the court did not err in failing to give the written requests to charge thereon as found in *Atlanta, B. & C. R. Co. v. Thomas,* 64 Ga. App. 253, 256 (12 SE2d 494), and *City Ice Delivery Co. v. Turley,* 44 Ga. App. 32, 37 (160 SE 517). The charge as given was satisfactory.

5. One of the written requests which was allegedly not given was, in substance, that actionable negligence involves the existence of a duty, the omission to exercise ordinary care and reasonable care in connection therewith, and injury resulting in consequence thereof. The written request was taken verbatim from *Patillo v. Thompson,* 106 Ga. App. 808, 812 (128 SE2d 656). An excerpt from the charge as given as to actionable negligence is as follows: "Now in order to be actionable the negligence must be the proximate cause of the event, and by proximate cause I mean that which by a natural and continuous sequence unbroken by any new cause produces an event and without which the event would not have occurred. Negligence to be the proximate cause of the injury must be such that a person would have foreseen that some injury would likely occur therefrom, not that specific injury would result. Now from that definition, you will observe that a person may be guilty of negligence; but if that

negligence had nothing to do with the happening of the event, he cannot be held liable on that account."

We think the charge as given met every requirement of that found in *Patillo v. Thompson,* supra, and there is no merit in the failure to give the written request.

6. The court did not err in failing to give the substance of Code § 38-119 regarding the presumption arising from the failure to produce evidence. The mere fact that the paymaster of a foreign shipping concern was not present and the mother of the deceased testified only as to the funds she received monthly by money order would not create a presumption that the plaintiff had more satisfactory evidence in her power which she did not produce. Nor was there any testimony shown that the alleged Dr. Gottschalk, who did not testify, was available and could have testified. Therefore, no presumption arose that Dr. Gottschalk, who treated the plaintiff Gallo in the emergency room (sewed up the wound in the scalp) should have been present and should have testified.

The court did not err in giving the other written request to charge based on this Code section.

7. The release of the Georgia Ports Authority, although error, is not cause for a reversal of the entire case, since it was merely a third party defendant, brought in the case, not as a joint tortfeasor or as a substitute defendant, but for the purpose of contribution to the third party plaintiffs, who are themselves defendants. Except as to the Ports Authority and the plaintiff La Pintada Compania de Navigacion S. A. the evidence was sufficient to support the verdict. Therefore, the judgments are reversed as to the Georgia Ports Authority (the third party defendant) and as to the plaintiff shipping company. The judgments are affirmed as to the other plaintiffs against the defendants. We find no reason for reversal of all judgments. See in this connection *Kennedy v. Johnson,* 61 Ga. App. 855 (7 SE2d 752); *Doyle v. United Finance Co.,* 97 Ga. App. 257 (1c) (102 SE2d 637); *Burkhalter v. DeLoach,* 171 Ga. 384 (5-9) (155 SE 513); *Jeffreys-McElrath Mfg. Co. v. Huiet,* 196 Ga. 710 (3) (27 SE2d 385, 150 ALR 1200). Therefore a new trial will be necessary to determine if any contribution be due by third party defendant, Georgia Ports Authority, for any or all of the judgment in favor of the plaintiffs (Mrs. Schettino and Gallo) against the defendants. The issue for trial in the lower court will be as to whether Georgia Ports Authority committed negligence such as to render it liable; and if so, in what amount it must

contribute towards payment of the previous judgment. The shipping company's case should be dismissed.

*Judgment affirmed in part; reversed in part. Bell, C. J., concurs. Hall, P. J., concurs in the judgment.*

ARGUED JANUARY 8, 1973 — DECIDED APRIL 3, 1973 — REHEARING DENIED, MAY 11, 1973 — 

*Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, E. Ormonde Hunter, Kennedy & Sognier, John G. Kennedy,* for appellants.

*Lawton, Sipple & Chamlee Julian C.Sipple, Oliver, Maner & Gray, Thomas S. Gray, Jr., George P. Donaldson, III,* for appellees.