27424. SOUTHERN RAILWAY COMPANY *v.* RILEY.
27425. SOUTHERN RAILWAY COMPANY *v.* SANDERS.

476

Decided July 12, 1939.   Adhered to on rehearing, July 26, 1939.

*Harris, Harris, Russell & Weaver,* for plaintiff in error.

*Arnold, Gambrell & Arnold, Ernest M. Smith,* contra.

Stephens, P. J.   Mrs. A. W. Riley and Mrs. Mildred Wilson Sanders brought separate suits against Southern Railway Company for the recovery of damages growing out of the same transaction. Mrs. Riley brought suit for personal injuries alleged to have been received by herself, and Mrs. Sanders brought suit for the recovery of the homicide of her minor son, both injuries being caused by the collision at a public crossing between a train of the defendant and an automobile which Mrs. Riley was driving and in which the son of Mrs. Sanders was riding.   The injuries were alleged to have been caused by the negligence of the railroad company in failing to sound the whistle of its engine as required by law on approaching the crossing, and in negligently failing to have erected on the side of the highway a sign warning persons approaching along the highway of the existence of the crossing.   Both cases were tried together.   In each case the jury found a verdict for the plaintiff in the sum of $2500.   The defendant in each case moved for a new trial.   To the overruling of the motions for new trial the defendant in separate bills of exceptions excepted.   For a state-

ment of the allegations of the petitions see the report of these cases in 57 *Ga. App.* 26, in which judgments overruling the demurrers to the petitions were affirmed.

It appears from the evidence that Mrs. Riley, about 4 o'clock in the morning of January 5, 1936, was traveling in an automobile which she was driving in a southerly direction along the public highway leading from McDonough towards Macon, and was approaching a point where the railroad tracks of the defendant crossed the highway, and that accompanying her in the car was her grandson, the little Sanders boy, who was nine years of age; that she was unfamiliar with the road, had never traveled over it before, and did not know the proximity of the defendant's railroad or of the crossing; that she was traveling at a rate of about thirty-five miles an hour, according to her testimony; that after she had turned a curve in the road to the right and the headlights on her car had shone in the road ahead of her, she observed the train of the defendant passing over the crossing going in a northerly direction; that she immediately applied the brakes and deflected her car to the left and ran into the moving train, with the result that she received severe physical injuries and the child was killed. There was evidence that Mrs. Riley did not see the train or know of its approach until she observed it after turning the curve in the road and her lights fell upon it, and that when she discovered the existence of the train she was unable to stop her car in order to avoid the collision. Mrs. Riley testified that she had the window on the side of her car partly open, when traveling the highway and approaching the crossing, and did not hear the blowing of the whistle on the defendant's train. There was also evidence that a railroad crossing sign, which had been on the convex side of the curve, on the left side of the road approaching the crossing, at or about the point where the road began to curve to the right, was down on the ground, and that Mrs. Riley did not see any crossing sign warning her of the proximity of the crossing. There was evidence as to the extent of her injuries, and also evidence tending to show that Mrs. Sanders was dependent on the child for her support and that he contributed thereto, and tending to establish the value of the child's life.

On the trial of the case it appeared that the engineer of the defendant, who had operated the train at the time was dead. The

only evidence tending to show that the defendant's train sounded the crossing whistle was that of other employees of the defendant. The conductor of the train testified that a blast of the whistle at the crossing could have been heard for several miles, as far as Mrs. Riley was from the engine of the train when it was at the blow post.

It is inferable from the evidence as to the speed at which Mrs. Riley was traveling, notwithstanding the fact that the thirty-fifth car of the train had passed over the crossing when she reached the crossing, that she was within auditory distance of the whistle before the engine arrived at the crossing. It is therefore inferable, notwithstanding her negative testimony to the effect that she did not hear the whistle, that she could and would have heard it had it been blown. The evidence therefore was sufficient to authorize the jury to find that the whistle of the defendant's engine failed to blow on the engine's approach to the crossing. *Pollard* v. *Gorman,* 52 *Ga. App.* 132 and cit., (182 S. E. 678).

It is insisted by the defendant that any failure to blow the crossing whistle under the circumstances could not be negligence as respects the plaintiffs where the train had already arrived at the crossing, that the object in providing for the sounding of the whistle by a train approaching the crossing is to warn persons approaching the crossing of the approaching train, and that after the train has gotten upon the crossing and is passing over the crossing, the presence of the train itself on the crossing is sufficient notice of the presence of the train, and that the failure to blow the crossing whistle could not be the cause of the failure of a person approaching the crossing to know of the presence of the train on the crossing. This contention is not sound. Besides, the law of the case as laid down in the decision of this court on the judgments on the demurrers, as reported in 57 *Ga. App.* 26, is that a failure of the defendant to blow the crossing whistle was negligence as a matter of law as respects the plaintiffs. *Lewis* v. *Powell,* 51 *Ga. App.* 129 (179 S. E. 865) ; *G. S. & F. Ry. Co.* v. *Shobe,* 142 *Ga.* 767 (83 S. E. 786). The object of the law requiring those in charge of a train to sound a whistle on approaching a crossing is to notify persons who might come within the realm of the danger of a train at the railroad crossing. Where a person is traveling along a highway approaching a crossing and does not

know of the existence of the crossing, and can not know of it until he turns a curve in the highway and is almost on the crossing, the sounding of the whistle of the train when approaching the crossing may warn such person of the approach of the train. If the operator of a train sounds the whistle on approaching the crossing, a person approaching the crossing, under the circumstances narrated above, will be put on notice of the approaching train.

There was no error in the charge to the jury that the law requires persons operating a railroad train to blow the whistle when approaching a crossing on the ground that the evidence did not authorize the charge.

■ One of the grounds of negligence alleged in the petitions as proximately causing the injuries complained of was the failure of the defendant to have on the east side of the highway on the east side of the railroad a sign "warning persons approaching in automobiles of the dangers of said crossing." It appears from the evidence that such a sign had been erected at the place indicated, but that it had fallen down and was on the ground when Mrs. Riley came along in her automobile, and for this reason the sign was not seen by her. If there was any negligence chargeable to the railroad by reason of not having erected such sign at the time and place it was in the fact that the railroad had negligently allowed the sign to remain down, and had not re-erected and replaced it when Mrs. Riley came along the highway. It appears conclusively without dispute from the evidence that the sign was up and in place earlier in the night before the time of the collision between Mrs. Riley's automobile and the train, which was about four o'clock in the morning. It appears from the testimony of a witness who had traveled along the same highway in an automobile that the sign was knocked down by him at about 12 o'clock that night. This was about four hours, during the nighttime, before Mrs. Riley came along the highway. This is undisputed by the evidence. There is no evidence whatsoever that any employee of the railroad, or persons connected with it, had any knowledge of the fact that this sign was down, or was in the neighborhood of where the sign was at any time during the night after the sign was knocked down, except persons in charge of a train which passed over the crossing at the time when the sign was knocked down. There is no evidence whatsoever that any of these persons in charge

of the defendant's train had any knowledge of the fact that the sign was down, or that it was their duty to make any inspection of the railroad track or the highway in the interest of seeing that they were properly and safely maintained for travelers along the highway. It can not be inferred that the persons in charge of the passing train observed or knew that the sign was knocked down.

It does not appear from the evidence that any negligence was chargeable to the railroad company in failing to re-erect the sign in the middle of the night after it had been knocked down; and it does not appear that any servants of the railroad company had any knowledge of the fact that the sign was down, or could have discovered that it was down. Under the undisputed evidence there was no duty on the railroad company to have re-erected, at the time Mrs. Riley was approaching the crossing, the sign warning travelers of the existence of the crossing, and the failure to have the sign erected and in place at the time Mrs. Riley passed by, under the undisputed evidence, was not negligence. It was therefore error prejudicial to the defendant for the court to charge that "every railroad company is required also to erect at such public crossings the cross-arm signpost which is described in the petition and which it is alleged was down at the time of this collision." The only ground of negligence, other than the alleged negligence in failing to have erected the crossing sign at the time and place, was the failure of the defendant to sound the crossing whistle on approaching the crossing. This fact was sought to be established solely by the negative testimony of Mrs. Riley that she did not hear the whistle blow. The jury, on the consideration of this ground of negligence alone, to the exclusion of the ground of alleged negligence in the defendant's failure to maintain the crossing sign, might not have concluded that the defendant had failed to blow the whistle, and might not have found the verdicts rendered. This charge was calculated to influence the jury in concluding that the railroad company was negligent in not having the sign erected at the time and place, and that this was the cause of the injuries, and to influence the rendition of the verdicts found for the plaintiffs. This error in the charge requires the grant of a new trial.

■ The court, when charging that the law requires persons in charge of a railroad train to blow a whistle on approaching a crossing, also charged that the engineer or operator of a locomotive

should keep and maintain, in approaching a crossing, a constant and vigilant lookout on the track ahead, and should otherwise exercise due care in approaching a crossing. The portion of this charge, that the law requires the engineer or operator to keep and maintain a lookout when approaching a crossing, was not applicable to the evidence. It does not appear from the evidence that the failure of those in charge of the train to keep a lookout along the track in approaching the crossing could have possibly contributed to the injuries. While this charge might not have been prejudicial to the defendant, and might not have been error requiring the grant of a new trial, it was nevertheless not authorized by the evidence. It was irrelevant, and should not have been given.

In the case of Mrs. Sanders, the defendant excepted to the charge to the jury wherein there was submitted the question of Mrs. Sanders' dependency on the child for support. The defendant contends that the charge was error in that it was not adjusted to the evidence in that the evidence was insufficient to show that Mrs. Sanders was dependent on the child for support. The defendant contends that there could be no dependency if the child consumed more from the parent than it contributed to the support of the parent. There was no merit in either contention. A mother may be dependent on her child for support notwithstanding the fact that she may contribute more to the child's support than the child contributes to her support. It is therefore not necessary that the child should contribute more than he consumes from the mother in order to render the mother dependent on the child for support. It is immaterial to a determination of the mother's dependency that the child might not earn sufficient money to support himself. It was not error for the court to charge that such fact was immaterial to the determination of this question, as contended by the defendant, on the ground that the fact that the child consumed more than he contributed to the support of the parent could be considered by the jury in determining whether the parent was dependent on the child and whether he contributed to her support. In so charging the judge did not express an opinion on the facts. He merely stated what the law was on an assumption of the facts, and expressed no opinion that it was established as a fact that the child contributed less than it consumed. Besides, if it was an expression of an opinion on the facts, it was favorable to the defend-

ant, as applied to the contention made by it that if the child contributed less than it consumed the jury would be authorized to find that the mother was not dependent on the child for support.

The court erred in overruling the motion for new trial in each case.

*Judgment reversed in each case. Sutton and Felton, JJ., concur.*