**HOGAN et al. v. WILLIAMS et al.**

No. 13699.

United States Court of Appeals
Fifth Circuit.

Dec. 7, 1951.

Rehearing Denied Jan. 9, 1952.

Larry E. Pedrick, Wilson G. Pedrick, Waycross, Ga., for appellants.

E. O. Blalock, Waycross, Ga., for appellees.

Before McCORD, RUSSELL, and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

The appeal in this case results from the trial of two separate actions by two mothers to recover, under the wrongful death statute of Georgia,[1] for the deaths of their daughters who were killed in a collision between a truck and a school bus, upon which they were passengers. The Court directed that the actions be tried together. The jury returned verdicts against the appellants in favor of the respective complainants in the amounts of $40,000.00 for each. The defendants in the trial Court were Sherman B. Hogan, driver of the truck; Central Truck Lines, Inc., owner or lessee

1. Georgia Code. § 105–1307.

of the truck; Fireman's Fund Indemnity Company, insurer of the truck under the provisions of the Georgia statute with reference to motor carriers for hire;[2] and J. W. Lowder, the driver of the school bus. Central Truck Lines, Inc., was not named as a defendant in the suit of Carrie Jackson. The complaint was predicated upon allegations that the negligence of the driver of the truck and the driver of the school bus concurred in causing the deaths, so that the defendants were liable as joint tort feasors. The answer and defense of each defendant charged that the negligence of the other was the sole proximate cause of the fatal collision. The bus was not a county school bus, but one owned by the negro members of the Center High School Athletic Association in support of the athletic activities of their children and of which Naomi Jackson, the teacher killed in the accident, was a member. Lowder urged the additional defense against the complainants that the bus was being driven "as an agent in a joint enterprise for the benefit of one of its members (Billie D. Williams) and also a fellow servant and employee (Naomi Jackson, the teacher)." Appellants here are the "truck defendants", since Lowder was discharged by the jury's verdict.

The collision occurred on January 21st, 1950, at about 1:30 o'clock, A. M., some 16 miles south of Waycross, Georgia, when the school bus, on its return from a basketball game in Jacksonville, Florida, driven by Lowder and carrying 32 passengers, including the deceased, and traveling northward on U. S. Highway No. 1, struck the rear of a semi-trailer truck driven by Hogan, and caused the death of the two passengers, Billie Williams, aged 18, a student, the daughter of the complainant-appellee, Anna Laura Williams; and Naomi Jackson, aged 22, a teacher, the daughter of complainant-appellee, Carrie Jackson.

Lowder testified that he was driving about 40 miles per hour when he observed the truck ahead of him, going in the same direction, and traveling about 30 miles per hour. There was no traffic, no obstructions, and the night was not foggy. Lowder followed the truck about a quarter of a mile, and since he was traveling faster than the truck he slowly closed the distance between them until he was about 25 or 30 feet behind the truck. He blinked his lights three or four times, intending to go around the truck, but at this moment the truck, without any kind of physical signal, suddenly stopped. Lowder immediately applied his brakes and cut sharply to the left. There was not sufficient space in which the bus could then pass the truck and the right side of the bus struck the left rear of the truck. The witness stated, "The truck was standing still when I hit it."

Hogan testified that he was driving not more than 30 miles per hour when he noticed some bright lights approaching him from the rear. Suddenly he "felt the thud or heard it," and he then applied his (air) brakes. Almost simultaneously there was a second thud harder than the first. There was no obstruction on the roadway,—the truck was stopped because of the first thud. Simmons, a relief driver who was in the truck, testified to the same effect. Harrison, another truck driver who was driving a van for Central Truck Lines, Inc., in the vicinity at the time, testified that a school bus passed him about 15 miles from the scene of the accident traveling about 60 miles per hour. There was evidence that both vehicles skidded a number of feet according to tire marks on the road; there was debris and dirt where the two vehicles were stopped and none at any other place on the road, indicating that the impact occurred at that point; and also testimony that more debris fell to the pavement when the vehicles were separated.

The appellants urge specified errors common to both cases and additionally, as confined to the Williams case, strenuously contend that the evidence wholly failed to establish the necessary dependency and contribution to authorize a recovery by Anna Laura Williams, so that the Court erred in refusing to direct, upon motion, a verdict for defendants in that case. We shall consider this assignment of error first.

2. *Georgia Code*, § 68–612.

The facts upon which the claim of the requisite statutory dependency and contributions [3] is based are not in material dispute. The question is whether the showing was sufficient to present a question for the determination of the jury. We think they were and we therefore find no error in the trial Court's refusal to grant the motion for a directed verdict. The complainant's evidence upon this score is fairly summarized in the appellee's brief. We set it forth in the margin.[4] Plaintiff's mother, Claudia Myrick, the grandmother of the deceased child, testified to the same effect.

In support of their contention that the evidence shows that Anna Laura Williams was not dependent upon her daughter for support, and that the deceased daughter did not contribute to her support, appellants cite, among other cases, Ga. Railroad & Banking Co. v. Spinks, 111 Ga. 571, 36 S.E. 855; Savannah Electric Co. v. Bell, 124 Ga. 663, 53 S.E. 109; Atlantic Coast Line R. Co. v. McDonald, 135 Ga. 635, 70 S.E. 249; Trammell v. Southern Ry. Co., 5 Cir., 1910, 182 F. 789; and Fuller v. Inman, 10 Ga. App. 680, 74 S.E. 287. In the Spinks case,

the Supreme Court of Georgia held that a father could not recover for the homicide of his son who contributed money to him to aid in supporting his family, consisting of a second wife and children, if the father's earnings were sufficient to support himself. This decision was followed by a divided court in the Trammell case, supra, and was cited in the McDonald case, supra, and Fuller case, supra, but was not controlling in the latter two cases. The Bell case, supra, is not in direct point with the instant proceeding, but its implication is that were the parent financially independent of money contributed by her daughter, she could not recover for the homicide of the child. In the cases relied upon, it must be noted that, with the exception of the Trammell case, supra, which was controlled by the Spinks case, the only contributions relied upon were those in money, there being no allegations that the parent depended upon or received contributions from the child in the form of services.

The substance of the Georgia rulings may be summarized as follows: Dependence for support need not be complete

3. While the statute reads "dependent or who contributes", it was early declared that the word "or" should be read "and". Clay v. Central Railroad & Banking Co. of Ga., 84 Ga. 345, 10 S.E. 967.

4. Both plaintiff's husband and father had been dead for more than fifteen years, her mother was a widow and plaintiff was the oldest child. Plaintiff and her only child, Billie D. Williams, stayed in the home with plaintiff's mother for eleven years before plaintiff went to New York, and plaintiff cared for her ailing mother. Before going to New York plaintiff did domestic work in Waycross and the most she ever earned was $7.00 per week. Plaintiff went to New York in 1944 so that she could earn more money, and while in New York earned $30.00 per week, besides room and board. The deceased daughter remained in Waycross and took the place of plaintiff in looking after plaintiff's mother. Decedent slept with plaintiff's mother nightly, helped her with practically everything including washing, ironing, cooking, cleaning house and running errands. From her larger earnings plaintiff sent money to her daughter to be used in supporting the daughter and plaintiff's mother. The daughter did all the writing, wrote plaintiff every week, and plaintiff depended on deceased to keep her informed about plaintiff's mother. While in New York plaintiff would write her daughter to run errands for her which deceased did. The fact that deceased stayed with and looked after plaintiff's mother saved plaintiff from hiring someone else to look after her mother. Plaintiff could not and would not have gone to New York if her daughter had not remained here to look after her mother. The daughter performed all these services for plaintiff and plaintiff was dependent upon her for such services. Since the daughter's death plaintiff had to give up her job in New York and return to Waycross to care for her mother; the most she has been able to earn since returning to Waycross is $10.00 per week. Since returning, she has looked after her mother the same as deceased did; would not have moved back to Waycross if daughter had lived. All the services performed by the daughter were performed from the time plaintiff went to New York until her daughters' death.

to enable a parent to recover for the homicide of a child; partial dependence accompanied by substantial contribution is sufficient,[5] and such contributions may be either in money or services,[6] and may be only slight.[7] A mother may be dependent on her child for support notwithstanding the fact that she may contribute more to his support than the child contributes to her support. It is immaterial to a determination of a mother's dependency that the child does not earn a sufficient sum to support himself or that he consumes more than he contributes.[8] No fixed, definite rule can be laid down which would be applicable in all cases, but each case must depend upon its own peculiar facts.[9] In Scott v. Torrance, supra, [69 Ga.App. 309, 25 S.E.2d 126], the Court stated, " * * * [S]ervices of a child to a mother or of a mother to a child may well be reckoned as contributing substantially to the support of the recipient far beyond any money value which the services may have, and the chief element of dependence may be in respect to personal services of that nature."

With these later rulings in view, and considering that the rule applicable to the Spinks case, supra, has, with but one exception,[10] never been applied in any other case by the Georgia Courts, but to the contrary, recovery has been allowed in similar cases,[11] the law of that case, if applied at all, should be restricted to the facts in that case. The later Georgia decisions doubtless are influenced by increased recognition of the nature and purposes of the statute,—partly compensatory, and partly penal. Western & Atlantic R. Co. v. Michael, 175 Ga. 1, 165 S.E. 37.

In any event, the Court is not here confronted with a situation similar to those in the cases cited by the appellant. The evidence shows, without contradiction, that the deceased child cared for Anna Laura Williams' mother, her grandmother, and if she had not performed these services her mother would have had to hire someone else to perform them. In addition to attending to her grandmother for her parent, the daughter ran errands for her mother; kept her mother informed as to the grandmother's condition; and disbursed money sent by her parent for the benefit of her grandmother, as well as for herself. While these services rendered to Anna Laura Williams by her daughter would meet the test of partial and/or slight support, the circumstances and facts of this case disclose that a far greater contribution was made to the support of the mother by the daughter by staying with her grandmother, which enabled her parent to go elsewhere and seek and obtain employment with greatly increased compensation. This was certainly not a vicarious contribution to the mother's sup-

5. Central of Ga. Ry. Co. v. Henson, 121 Ga. 462, 49 S.E. 278, and cases cited; Savannah Elec. Co. v. Bell, supra; Indian Springs Swimming Pool Corp. v. Maddox, 70 Ga.App. 842, 29 S.E.2d 724.

6. Reid v. Moyd, 186 Ga. 578, 198 S.E. 703; Central of Ga. Ry. Co. v. Henson, supra; City Ice Delivery Co. v. Turley, 44 Ga.App. 32, 160 S.E. 517; Savannah Elec. Co. v. Thomas, 30 Ga.App. 405, 118 S.E. 481.

7. Reid v. Moyd, supra; Gay v. Smith, 51 Ga.App. 615, 181 S.E. 129.

8. Scott v. Torrance, 69 Ga.App. 309, 25 S.E.2d 120; Southern Ry. Co. v. Riley, 60 Ga.App. 475, 4 S.E.2d 54.

9. Fuller v. Inman, 10 Ga.App. 680, 686, 74 S.E. 287; Scott v. Torrance, supra, 69 Ga.App. at page 317, 25 S.E.2d 120.

10. Raleigh & Gaston R. Co. v. Ellett, 111 Ga. 879, 36 S.E. 937. "This case, upon its facts, falls within and is controlled by the rule of law this day announced in the case of Ga. R. R. & B. Co. v. Spinks".

11. Savannah Elec. Co. v. Thomas, supra [30 Ga.App. 405, 118 S.E. 484]. Judgment affirmed for mother who sued to recover for the homicide of her six year old child who "helped me to make a living by doing these little things I have referred to." It appears from the facts in this case that the mother was financially independent of any contributions from her son. City Ice Delivery Co. v. Turley, supra [44 Ga.App. 32, 160 S.E. 518]. Judgment affirmed for widow who sued to recover for the homicide of her four year old daughter who performed valuable services in assisting "about the home", although the mother was financially independent.

port, but was a direct and substantial contribution for which she was dependent. As was said in Scott v. Torrance, supra, "except in clear and unusual cases, it is for the jury to decide whether a plaintiff has brought herself within the terms of the section when she has concluded her evidence." The trial Court did not err in refusing to direct a verdict, since the undisputed testimony .presented a question for the jury to decide.

 As a claimed error, common to both cases, the appellants strenuously insist that the refusal of the trial judge to give a requested instruction tendered by the appellants to the effect that the jury must not consider the fact that the Fireman's Fund Indemnity Company issued a policy of liability insurance in determining whether the defendant Sherman B. Hogan was negligent.[12] It is conceded, as indeed it must be, that since the Central Truck Lines, Inc., was a motor common carrier operating under a certificate from the Georgia Public Service Commission it was permissible for the insurance company to be sued jointly with the motor carrier as was done in the present case, and, indeed, the Georgia statute permits an action to be maintained against the surety or insurance carrier without joining the motor carrier, although the suit is based on the negligence of the motor carrier.[13] In such cases the policy of insurance is frequently attached as an exhibit to the complaint, as was done in this case. While the idea which prevails that if the existence of insurance in his behalf is before the jury the defendant and the insurance carrier are likely placed in an unfavorable situation may be accepted, in a case such as the present, it is a consequence of the law and the business conducted by the insured. It thus presents an entirely different situation from one where an individual defendant may have secured a policy of liability insurance for his personal protection. This distinction is recognized by the appellants, and used as a basis for the contention of error in failing to give the instruction requested, since it is said that because .the defendants were forced to acknowledge the existence of insurance, with its prejudicial effect, the cautionary instruction requested was all the more necessary if the defendants were to have a fair determination of the question of the driver's negligence. The argument is further buttressed by the charge that the fact of insurance coverage was "unduly magnified" by other charges of the Court and by a colloquy between the Court and counsel. As to this, in view of the nature of the suit and the fact that the insurance company was properly made a defendant, it is difficult to see how truthful references to the fact of insurance could be said to "magnify" the fact any more than was already apparent to the jury. We do not pass upon the propriety of the language in which the requested admonition to the jury is phrased, although it might well be that the last sentence of the request could be considered as argumentative, or at least as containing an intimation which, because of the language employed, might prevent the plaintiffs themselves from securing a fair appraisal by the jury of the question of negligence. However this may be, in view of other references to this feature of the case in the general charge of the Court, we can not sustain the claim of reversible error. In his charge the Court twice instructed the jury that in no event could a verdict be rendered against the insurance company unless a verdict was also found

---

12. "'I charge you further that the fact that Fireman's Fund Indemnity Company issued a policy of liability insurance to protect Central Truck Lines, Inc. must not be considered by you in determining whether or not the defendant, Sherman B. Hogan, the driver of the truck, is liable to the plaintiff under the instructions given you by the Court. The Court reminds you that you are sworn officers of the law under the highest duty of deciding this case upon the material issues and evidence, and if in determining whether or not Sherman B. Hogan was negligent you should be influenced to the least degree by the existence of the liability insurance policy of Fireman's Fund Indemnity Company, then your verdict would be an improper one, and one without proper foundation.'"

13. Georgia Code, § 68–612, supra; Great American Indemnity Co. v. Vickers, 183 Ga. 233, 188 S.E. 24; Tarrant v. Davis, 62 Ga.App. 880, 10 S.E.2d 636.

against the truck line and/or Hogan, the driver, and·clearly instructed that a verdict could not be found against the defendants or either of them because one of them was an insurance company. This, together with the instructions of the Court as to negligence and as to the jury's duty to seek and determine the truth of the matter involved is the same in import as the requested instructions, and we find no ground for an adjudication that the jury likely inferred that their ·verdict could properly be based upon the existence of insurance apart from the requisite finding that the driver of the truck was guilty of negligence.[14]

The appellants contend further that the trial judge erred in submitting to the jury that portion of the. Georgia statute [15] which makes it unlawful for any person to stop or park any automobile or truck on any highway within eight feet of the center line of such highway. The charge was. excepted to upon the ground that under the evidence and issues the charge was not applicable to the ·case. It is contended that the statute was intended to cover an entirely different situation from that presented by the issues and evidence in this case, since it relates to vehicles which are stopped or parked on a highway "for at least an appreciable length of time and was not intended to apply to a situation where it is contended that while two vehicles are moving in the same direction brakes are suddenly applied on the front vehicle and it is struck by the following vehicle while stopping or immediately thereafter." Cases from other jurisdictions are cited with reference to the

meaning of the word "park" and to the Georgia case of Railway Express Agency, Inc. v. Mathis,. 83 Ga.App. 415, 63 S.E.2d 921, 925. However, this latter case in fact refers to the exception contained in the statute, which renders it inapplicable to "temporary stops made as a normal and reasonable incident to traffic conditions existing at the time." We think the language of this proviso is illustrative of the meaning to be given to the words "stop or park" employed in the Georgia statute. If the term "stop" is to be applied as contended by the appellants there was no reason for the legislative insertion of the proviso with reference to temporary stops occasioned by· traffic conditions. We find no Georgia cases dealing with this precise question. Our attention, however, is directed to the decision in Guderyon v. Wisconsin Telegraph Co., 240 Wis. 215, 2 N.W.2d 242, 243, where it was held that the words "parked or stopped" when used in the statute should not be construed as not to include the prohibition of a mere temporary halt,[16] since stopping as well as parking is within the inhibition of the statute. Where not required by traffic conditions, we can see no reason why a sudden stopping upon the highway is not equally as, if not more, dangerous than parking so far as a following traveler is ·concerned. We believe the Georgia statute to be properly as applicable to sudden stops of even intended temporary duration equally with ·parking, since the apparent object of the statute is to prevent the blocking of the highway. But however this may be, our discussion of the

14. Levin v. Joseph E. Seagram & Sons, 7 Cir., 158 F.2d 55; Cohen v. Evening Star Newspaper Co., 72 App.D.C. 258, 113 F.2d 523.

15. Georgia Code, § 68–314. The portion charged was as follows: "It shall be unlawful for any person to stop or park any automobile, automobile truck, tractor, trailer, or other motor vehicle, or horse-drawn vehicle on or along any State-aid road or highway, unless such vehicle be placed so that it is at least eight feet removed from the center line of such State-aid road or highway; and such vehicle shall be so parked that no portion thereof shall be within eight feet of the center line of such State-aid

road or highway." There was no exception to the failure to quote the entire statute.

16. See also: Stafford v. Consolidated Bus Lines, 179 Tenn. 185, 164 S.W.2d 15; Owen Motor Freight Lines v. Russell's Adm'r, 260 Ky. 795, 86 S.W.2d 708; Fontaine v. Charas, 87 N.H. 424, 181 A. 417.

In Capital Motor Lines v. Gillette, 235 Ala. 157, 177 So. 881, the Supreme Court of Alabama likewise· construed a similar Alabama statute which provided that "No person shall park or leave standing any vehicle" etc. Code 1940, Tit. 36, § 25.

proper application of the statute as a matter of law deals with a question not embraced within the objection presented in the trial Court. The exception was there taken upon the ground that the instruction was not authorized by the evidence and the issues. The appellant co-defendant Lowder charged that the driver was negligent "in stopping his equipment directly on the pavement within two feet of the center line without pulling as near to the right side of the highway as practicable." His testimony was that at the time of the collision the truck was stopped. Consequently, the precise objections presented to the charge were not based upon valid grounds. Under the circumstances of this case we find no cause for reversal in this assignment of error.

Appellants also assign error upon an excerpt from the charge of the Court which is set forth in the margin.[17] It is here insisted that "the substance and effect of this charge was to tell the jury that if Sherman B. Hogan, by the exercise of ordinary care, could have avoided the collision, the plaintiff would not be entitled to recover from the defendant Lowder, but could recover against Hogan, regardless of any negligence found on the part of Lowder." The objection presented to the trial Court was, "we except to that on the ground there is no evidence to justify that charge that Hogan could have avoided it even though Lowder was negligent, if it occurred." It is further urged here that even if the charge be considered as an instruction on the subject of "sole proximate cause" of the collision it is, nevertheless, not correct as a matter of law nor justified by the evidence.

Both defendants had asserted as a defense that the negligence of the other was the sole proximate cause of the collision. The defendants-appellants had, by a third defense, amplified the defense stated by averring that even if Hogan, the truck driver, was in some respects negligent yet the co-defendant Lowder could, nevertheless, by the exercise of ordinary care, have

avoided the consequences of such negligence and that, therefore, his negligence was the sole proximate cause of the collision. It is argued that this defense was predicated upon the decision in Louisville & Nashville Railroad Co. v. Patterson, 77 Ga.App. 406, 49 S.E.2d 218, which was a case involving a passenger who was a minor child in the care of her father, the driver of the automobile involved in a collision with train. In that case the Court considered that in such a situation that even if the railroad was negligent, if the driver could, by the exercise of ordinary care, have avoided the injuries the driver's negligence would be in law the sole proximate cause of the injuries under the provisions of the Georgia Code Section 105-603, which provides: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." The Court further declared, "Where the negligence of a defendant could have been avoided by one in charge of a child of tender years by the exercise of ordinary care, his negligence is regarded as the sole proximate cause under the doctrines of last clear chance and of proximate cause, irrespective of who is doing the suing. The doctrine of last clear chance is but the doctrine of [sole] proximate cause under another name." We may remark that the effect of some of the language in the Patterson case, supra, is questioned by a later decision of that Court in Georgia Power Co. v. Blum, 80 Ga.App. 618, 627, 57 S.E.2d 18, 24, wherein it is stated that the provisions of the Code quoted present "essentially the doctrine of last clear chance." It was said: "In the case of L. & N. Ry. v. Patterson, supra, there is language which might indicate that where one has an opportunity to avoid the acts of negligence of another and fails to do so, such failure amounts to the sole proximate cause of the injury to a person injured by reason of the negligence of both parties under the last clear chance doctrine. We do not believe such language was in-

17. "I charge you that if you find that Sherman B. Hogan, by the exercise of ordinary care, could have avoided the collision, regardless of any alleged negligence of J. W. Lowder, the plaintiff would not be entitled to recover from the defendant, J. W. Lowder."

tended to be so construed, as this rule of law does not apply where a third party, not himself at fault, sues joint tort-feasors." However, except as illustrating the evident purpose of the trial Court here to present the law applicable to the appellants' defense that Lowder's negligence, either in one way or another, was the sole proximate cause of the collision, the precise effect of the Georgia law is not material because not involved in this decision. On this point it is sufficient to say that it is not the plaintiffs who are complaining of the charge and that we do not approve the charge as correct so far as the rights of the plaintiffs are concerned. The question here is whether the charge evidences prejudicial error as against the appellants. Under the circumstances of the case and in the light of the objection urged, we do not find in this assignment of error any cause for reversal. Immediately preceding the charge complained of the Court had instructed the jury to the same effect with reference to the right of plaintiffs to recover from the defendant Hogan.[18] In that portion of the charge stating the contentions of the parties, the Court had also stated in immediate sequence the defenses of the Hogan defendants and the defendant Lowder in which each sought to escape any personal liability to the plaintiffs by asserting that the other's negligence solely caused the collision. In these circumstances, while the charge complained of inaptly stated the law of sole proximate cause as applicable between the defendants, and its correctness might be subject to challenge on the part of the plaintiffs whose suits were predicated upon the concurring negligence of the defendants as joint tort-feasors, we are, nevertheless, unconvinced that the charge complained of should be held to be so necessarily prejudicial to the appellants as to require the grant of a new trial. There are substantial verdicts in the cases and we have considered the assignment of error upon the grounds here urged which present a legal question not urged in the trial Court. We think it is clear that the ground there urged is not meritorious, since the evidence as to the circumstances of the collision would support a determination by the jury that either of the defendant operators of the vehicles might have avoided the negligence of the other. Where there is the basis for a finding that two vehicles are proceeding along the highway in the same direction with the following vehicle traveling at a speed of 35 to 40 miles per hour, and approaching within 25 to 30 feet of the lead vehicle, and the lead vehicle abruptly and immediately stops, when the highway is, except for the two vehicles, unoccupied and clear, we think the question of that negligence which is the sole proximate cause of the collision on the one hand, or whether such negligence naturally concurs in producing the collision, on the other, is peculiarly one for the jury.

■ The trial Court refused to give an instruction requested by the appellants to the effect that the right of the mother to recover for the death of the child is dependent upon "actual dependency and actual contribution" to the mother's support at the time of death.[19] It is contended on behalf of the appellees that the requested charge is objectionable in that under it the jury would have been led to believe that the fact of contribution and dependency must have been existing at the very moment of death. We see no reason for a discussion of the technical legal correctness of the requested

18. "I charge you that if you find that J. W. Lowder, by the exercise of ordinary care, could have avoided the collision, regardless of any alleged negligence of Sherman B. Hogan, the plaintiff would not be entitled to recover from the defendant, Sherman B. Hogan, or any defendant who is liable for the alleged negligence of Sherman B. Hogan."

19. "I charge you that the right of a mother to recover for the death of her child, under the Georgia law, is dependent upon an actual dependency upon the child for support and upon the actual contribution at the time to the support of the mother. Therefore, if at the time of the death (sic) the child, the mother was not actually dependent upon the child for support, or if at the time of the death the child was not actually contributing to the support of the mother, the plaintiff would not be entitled to recover against any defendant, regardless of any negligence involved."

instruction. The controlling fact is that in this case, under the evidence to which we have heretofore alluded, the question properly for the jury's determination was whether the facts showed a status of dependency and contribution sufficient to legally support a finding of their existence as an essential element of the plaintiffs' case. There was no question of an interruption of such dependency and contribution as was admittedly shown by the evidence. In other words, whatever condition existed, legally continued. There was no possible basis for an application of the principles ruled in such Georgia decisions relied upon by appellants as Smith v. Hatcher, 102 Ga. 158, 29 S.E. 162, where the son, for whose death the mother sought recovery, had been in the pentitentiary for two years before his death and had three more years to serve; or, Brawner v. Bussell, 50 Ga.App. 843, 179 S.E. 231, where the evidence showed that the child was confined in a mental institution at the time of his death. The Court, having charged the jury upon the subject of requisite dependency and contribution, did not err in refusing to give the additional instruction requested.

We think it sufficiently appears from the facts which we have already recited that the Court did not err in overruling the appellants' motion for a directed verdict predicated upon the ground that the evidence clearly shows that the collision was not proximately caused by the negligence of Hogan. The verdicts returned can not be said to be legally excessive and consequently the determination of whether a new trial should be granted because of the amounts of damages which the jury determined was a matter solely within the discretion of the trial Court. He, with the full power to rule otherwise, expressly found against the appellants' contention of excessiveness.

The record discloses no reversible error as against the appellants.

Judgment affirmed.