528 F.2d 405
 Gerald W. GATES, Plaintiff-Appellee,
v.
L. G. DeWITT, INC., and Insurance Company of North America,
et al., Defendants-Appellants.
Thelma Elizabeth WEBER, Plaintiff-Appellee,
v.
L. G. DeWITT, INC., Insurance Company of North America, and
Johnson Restaurant Supply Corporation, et al.,
Defendants-Appellants,
Gerald W. Gates, Defendant-Appellant.
Carl C. WEBER, Plaintiff-Appellee,
v.
L. G. DeWITT, INC., Insurance Company of North America, and
Johnson Restaurant Supply Corporation, et al.,
Defendants-Appellants,
Gerald W. Gates, Defendant-Appellant.
 No. 74--3291.
 United States Court of Appeals,
Fifth Circuit.
 March 15, 1976.
Rehearing and Rehearing En Banc
Denied June 7, 1976.
See 532 F.2d 1052.
 
 Griffin B. Bell, Jr., Fred S. Clark, Savannah, Ga., for defendants-appellants.
 Charles M. Jones, Hinesville, Ga., for Carl C. Weber and T. E. Weber.
 John W. Sognier, Savannah, Ga., for G. W. Gates.
 Walter C. Hartridge, Savannah, Ga., for Johnson Restaurant Supply, and G. W. Gates.
 Appeals from the United States District Court for the Southern District of Georgia.
 Before GODBOLD, SIMPSON and CLARK, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 These are consolidated Georgia diversity cases arising out of a highway accident involving three cars and a truck. Mr. and Mrs. Weber were occupants of one car. Each of them filed suit in Georgia state court against these parties: DeWitt Trucking, owner of the truck and holder of a certificate of public convenience and necessity from the Georgia Public Service Commission; Mills, DeWitt's driver; The Insurance Company of North America (INA), DeWitt's insurer; and Gates, driver of a second car. The Webers claimed damages aggregating $630,900, Mrs. Weber for personal injuries and Mr. Weber for personal injuries, medical expenses, loss of consortium and loss of his automobile.
 
 
 2
 The defendants removed the cases to the United States District Court for the Southern District of Georgia. Gates cross-claimed against the other defendants for any damages that might be assessed against him. Gates also filed in federal court a separate suit against DeWitt, Mills and INA for his personal injuries and the wrongful death of his wife, claiming damages in the aggregate of $654,500. The three cases were consolidated.
 
 
 3
 Joinder of INA as a defendant was permitted by Ga. Code Ann. § 68--612,[1] which requires a motor common carrier to file a bond or policy of indemnity insurance with the Georgia Public Service Commission to protect the public against injury caused by its negligence, and permits suit against the motor carrier and the insurer in the same action. The Webers, in their state-filed cases, and Gates in his federal-filed case, alleged that INA had issued an indemnity policy to DeWitt for the protection of the public and that it was in full force and effect. The policy was not attached to any of the complaints nor was the amount of coverage alleged. INA answered in all cases, admitting each plaintiff's allegations with respect to insurance.
 
 
 4
 At trial held in June 1973, proceeding under Rule 49(a), F.R.Civ.P., the court submitted to the jury special issues of fact on negligence and damages, and on contributory negligence with respect only to Gates. By its answers the jury found in the Weber cases that there was negligence by DeWitt, Mills and Gates proximately contributing to the injuries of Mr. and Mrs. Weber. It found Mrs. Weber's damages to be $952,529 and Mr. Weber's to be $22,921.27. In the Gates case it found that there was negligence by DeWitt and Mills proximately contributing to the death of Mrs. Gates and to injury of Mr. Gates, found the value of Mrs. Gates' life to be $184,187, and found the damages sustained by Gates as a result of his own injuries to be $122,771.47. It found Gates partially at fault and set at 3% the percentage of fault attributable to him as compared to that of DeWitt and Mills. No special issues were submitted to the jury relating to the liability of or damages against INA. No general verdicts were returned.
 
 
 5
 Post-trial, on motions for entry of judgment, Gates requested that judgments against him in favor of the Webers be entered for only 3% of the damages found by the jury to have been suffered by the Webers. In connection with this request, Gates raised the question of his right to contribution from the DeWitt defendants.
 
 
 6
 The court entered judgment in favor of Mrs. Weber against DeWitt, Mills, Gates and INA, jointly and severally, in the sum of $952,529, and in favor of Mr. Weber against the same defendants, jointly and severally, in the sum of $22,921.77. In the Gates suit judgment was entered against DeWitt, Mills and INA for $297,749.72, which is the aggregate of the damages for wrongful death ($184,187) and the damages for Mr. Gates' personal injuries ($122,771.47), reduced by 3% for Gates' contributory fault.
 
 
 7
 All defendants filed motions for new trial. The trial judge, by a lengthy opinion, denied the motions. He refused the request of Gates that the Weber judgments against him be for only 3% of their damages. He held that the question of contribution was not before him and that it would arise only after payment of the Weber judgments. All defendants appeal.
 
 
 8
 By regulation the Georgia Public Service Commission has fixed at 'not less than $25,000/$100,000' the amount of the bond or insurance policy that pursuant to § 68--612 must be filed by a carrier such as DeWitt, and it has provided that a certificate of insurance may be filed in lieu of the actual insurance policy. Each certificate of insurance states that when requested the insurance company will furnish the Commission with a duplicate original of the policy.
 
 
 9
 Before the date of the accident in question INA insured DeWitt in the amount of $1,000,000 for damages arising out of a single occurrence. INA did not file the policy with the Commission but filed a certificate instead. It is unclear whether the certificate showed actual policy limits, or limits of at least $25,000, or only showed that requirements of the Commission had been complied with, and it appears not to have been introduced into evidence. After the accident, counsel for DeWitt asked the Commission to furnish them a copy of the policy, counsel for the Webers made a similar request, and the Commission complied with both requests. Later, by motion to produce, the Webers secured from INA another copy of the policy.
 
 
 10
 A. Admission of the insurance policy into evidence
 
 
 11
 The major issue, raised by DeWitt, Mills and INA ('the DeWitt defendants') is whether the court reversibly erred in admitting into evidence, over objection, the INA policy insuring DeWitt for $1,000,000. The objection was not limited to admission of the portion of the policy indicating the policy limits but was directed to the policy in its entirety. The position of the DeWitt defendants, set out in a colloquy with the court outside the presence of the jury, was that INA had admitted by its answer, and the parties also had stipulated, that INA had insured DeWitt, thus the policy was not relevant to any issue in the trial. The trial judge dealt at length with this question in his order denying the motions for new trial. After reviewing the Georgia body of law relating to direct actions against insurers under § 68--612 he said:
 
 
 12
 This Court agrees with counsel that the admission of the liability policy with its elevated limits was quite prejudicial to the defendants. In this connection see Minnick v. Jackson, 64 Ga.App. 554 (13 S.E.2d 891); O'Neill Manufacturing Co. v. Pruitt, 110 Ga. 577, 579 (36 S.E. 59); Martinez, 'Insurance: Discovering Evidence', Insurance Law Journal (Jan., 1971), 471ff. That this Court was aware of the possible prejudicial effect of such a policy in a case of probable liability involving claims of serious personal injury as well as wrongful death is shown by the following instruction given to the jury:
 
 
 13
 'Now, Ladies and Gentlemen, there is a claim in this case against Insurance Company of North America. . . . Before, under the law of Georgia before a motor common carrier, such as DeWitt can be issued, or will be issued a certificate by the Georgia Public Service Commission to use the highways of this state, it must furnish a bond, or an indemnity policy indemnifying anyone injured through the negligence of the motor common carrier, so as to indemnify such person injured on the highways of Georgia. Now, this policy, is not a life insurance policy. It is not an accident policy, it is not a disability policy. It is an indemnity policy. And, only if DeWitt was negligent and is liable under the charges--charge I am giving you in this case, only then is the insurer, insurance company liable or responsible. The amount of the policy is of no concern to you. Neither is the existence of insurance in the case a matter of concern for you. Nor should it influence or determine your verdict, whatever your verdict may be. The verdict should be based on the law and the facts, and not on the existence of insurance.'
 
 
 14
 The prejudicial effect as to the existence and the amount of insurance does not make such evidence inadmissible. Under the Georgia decisions which have been referred to above the policy of insurance on file with the Georgia Public Service Commission was admissible and the fact that the coverage therein was high does not render it otherwise. 'While the idea which prevails that if the existence of insurance in his behalf is before the jury the defendant and the insurance carrier are likely placed in an unfavorable situation may be accepted, in a case such as the present, it is a consequence of the law and the business conducted by the insured.' Hogan v. Williams, (5 Cir.) supra, 193 F.2d (220) at 225.
 
 
 15
 On appeal the DeWitt defendants say, as they said to the District Judge, that there was no need for plaintiffs to 'prove' the contract sued on because as a result of the answers and stipulation the policy was not relevant to any contested issue. These defendants have not, however, referred us to any provision of answers or stipulation stating the policy limits, and, as we discuss below, the policy limits were an essential element of plaintiffs' proof.[2]
 
 
 16
 As we construe the trial judge's opinion he considered that he was required to admit the policy into evidence because the Georgia law commanded that he do so, and thus that he had no power to grant a new trial. It is not clear to us whether, in denying the motion for new trial of the DeWitt defendants, he thought that he was implementing a Georgia substantive principle binding under Erie or a Georgia evidentiary rule of admissibility then binding under F.R.Civ.P. 43(a).[3] We think he was wrong in his view that admission of the policy was mandatory under Georgia law. Also we think that the DeWitt defendants are wrong in their view, asserted on appeal, that the Georgia law commanded that the policy not be admitted into evidence.[4] We must therefore remand the case in order that the trial judge, under correct legal standards and exercising the broad discretion granted him with respect to motions for new trial, can consider the motions for new trial of the DeWitt defendants. 6A Moore, Federal Practice P59.15(3), p. 59--286; 11 Wright & Miller, Federal Practice & Procedure, § 2818, pp. 118--19. We point out infra that other issues necessarily must be considered along with that of admissibility of the policy, which will require that the trial judge also reconsider the post-trial motions of Gates.
 
 
 17
 An insurance policy filed under § 68--612 creates a direct and primary obligation to any person who sustains actionable loss or injury through the negligence of the insured in the operation of the insured vehicle. Great American Indemnity Co. v. Vickers, 183 Ga. 233, 188 S.E. 24 (1936). The cause of action against the insurer is in contract, not tort. Id.
 
 
 18
 A plaintiff proceeding against an insurance carrier pursuant to § 68--612 must, as part of his direct cause of action against the insurer, allege and prove the existence of the certificate of public convenience and necessity and of the policy of insurance. 'Coverage must be proved in these actions (under § 68--612); if not, no verdict and judgment could be sustained against the insurer.' St. Paul Fire & Marine Ins. Co. v. Fleet Transport Co., 116 Ga.App. 606, 158 S.E.2d 476, 479 (1967). The obligation to prove the terms of the insurance contract sued on includes an obligation to prove the policy limits. The plaintiff cannot recover from the insurer any more than the liability fixed by its contract and the statute. LaHatte v. Walton, 53 Ga.App. 6, 184 S.E. 742, 748 (1936). A § 68--612 policy 'grant(s) coverage as to all liability which might be sustained by the carrier under the terms of the statute within the limits of the coverage amounts . . ..' St. Paul Fire & Marine, supra, 158 S.E.2d at 479.[5] In Barber v. Canal Insurance Company, 119 Ga.App. 738, 168 S.E.2d 868 (1969), plaintiff took a default judgment against a § 68--612 insurer for $50,000, double the amount of coverage. The Georgia Court of Appeals stated that plaintiff 'failed to prove the policy and the extent of coverage as he should have done.' In short, as we have pointed out, a § 68--612 plaintiff suing the insurer must establish the existence and the terms of the contract sued on, including the limits.
 
 
 19
 The theory of mandatory admissibility under Georgia law springs from a body of law relating to Georgia pleading and practice. Under long-standing Georgia code provisions governing pleading and practice, a plaintiff was required to attach to his petition a contract sued on.[6] Presumably as a result of this section, the plaintiff suing under § 68--612 often attached a copy of the policy to the complaint, and if he failed to attach it the insurer could demur and require that it be attached. American Fidelity & Casualty Co. v. Farmer, 77 Ga.App. 166, 48 S.E.2d 122 (1948). As Judge Lawrence observed in the present case, an insurer with low limits might find it expedient to have them revealed. In an opinion of this court Judge Russell from Georgia referred to the Georgia practice.
 
 
 20
 In such cases the policy of insurance is frequently attached as an exhibit to the complaint, as was done in this case. While the idea which prevails that if the existence of insurance in his behalf is before the jury the defendant and the insurance carrier are likely placed in an unfavorable situation may be accepted, in a case such as the present, it is a consequence of the law and the business conducted by the insured. It thus presents an entirely different situation from one where an individual defendant may have secured a policy of liability insurance for his personal protection.
 
 
 21
 Hogan v. Williams, 193 F.2d 220, 225 (C.A.5), cert. denied, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348 (1952).
 
 
 22
 In our opinion the Georgia pleading requirement, and the state practice which grew up around it, do not rise to the level of a state rule, substantive or evidentiary, that compels the trial court in a § 68--612 case against the insurer to admit in evidence without limitation the entire policy--lock, stock and last comma--over the objection of the insurer. The plaintiff must prove the essential elements of coverage, but no case suggests that the only way available to him to do it is by putting the entire policy into evidence. Additionally, in this case the only issues submitted to the jury were negligence, causation and damages with respect to defendants other than INA. Consequently under Rule 49(a) the sole fact finder concerned with liability of INA was the judge, who is deemed to have made the necessary findings with respect to INA. To perform its task there was no reason for the jury to know limits, or any other provisions of the policy. Furthermore, the theory of mandatory admissibility is derived from law concerning what a plaintiff must plead. It carries the unspoken hypothesis that what the plaintiff pleads he must prove, and since he is required to attach the policy he is required to prove it and must be permitted to do so. That hypothesis has no application in this case because the Weber plaintiffs did not attach the policy in their state-filed cases, and Gates, who sued in federal court where his pleadings were controlled by F.R.Civ.P. Rule 8,[7] did not attach it either.
 
 
 23
 In addition to the argument previously referred to that because INA admitted coverage the policy limits were irrelevant and thus the policy inadmissible, the DeWitt defendants make a different argument that the policy was inadmissible because the only insurance having any relation to § 68--612 is the minimum required by the Commission and any excess is 'private' insurance unrelated to that section. This argument fails for several reasons.[8] The DeWitt defendants did not admit any amount of coverage--$25,000/$100,000 or otherwise--but only the fact of coverage, and, as we have pointed out, the amount of coverage to be adjudicated in the suit must be proved before a judgment can be entered against the insurer. Also, we find no Georgia case holding that if the insurer issues a single policy for more than the statutory minimum, the plaintiff suing under § 68--612 may secure a judgment against that insurer for only the minimum. The statute contains no such limitations. The insurance required by § 68--612 is indemnity insurance, not liability insurance. It would create multiple litigation to require the plaintiffs to recover from the indemnitor the statutory minimum in the initial suit and file later suits for excess amounts.[9] Finally, the DeWitt defendants urged the trial court to keep the policy out of evidence because INA acknowledged that it was fully responsible for any judgments returned in this case against the insureds. That representation could have meant no less than responsibility through judgments entered against INA in this case.
 
 
 24
 The policy was not inadmissible on the ground that at the time of the accident it had not been physically filed with the Commission. Admissibility does not turn on whether the policy was a matter of public record at the time of the accident.
 
 
 25
 In summary, the trial judge must consider the motions for new trial of the DeWitt defendants unfettered by the concept that Georgia law commanded him to admit the policy into evidence and also unfettered by the argument that under Georgia law it could not be admitted. On this re-examination he must, of course, give full effect to the possibility of admissibility under federal standards that were in effect at the time of trial.
 
 
 26
 While we have referred to the fact that the jury did not need to know the policy limits, or indeed any provision of the policy, we do not imply that unrestricted admission of the policy was automatically erroneous. A trial judge may not know when plaintiff's evidence is submitted whether he will submit the case for a general verdict, or submit special issues under Rule 49(a), or submit on special issues and a general verdict under Rule 49(b), and if special issues are to be used he may not have decided how the issues are to be divided between him and the jury. He may wish to leave all his options open until later in the trial and even until the evidence is concluded. Also, while we do not even hint at what the trial judge's ruling should be, we observe that the DeWitt defendants lodged merely a plenary objection based on relevancy grounds, and at no point did they confine their objection to revealing the policy limits, nor did they suggest to the court that the policy, or its statement of limits, be admitted for the limited purpose of examination by only the trial judge or that the policy be admitted generally with the statement of limits deleted.
 
 
 27
 There are other issues that necessarily must be reconsidered by the District Judge along with the question of admissibility of the insurance policy. These include: argument made to the jury by counsel for Gates as defendant, making reference to the policy and the economic impact of a judgment upon INA; the volunteered statement by an expert witness, called by Gates as defendant, to the effect that the DeWitt truck had intended to strike the Weber car; the question of whether damages are excessive; and the jury's division of fault between DeWitt and Gates.
 
 
 28
 There are other issues raised on appeal which are unrelated to the matter of admissibility of the insurance policy and to any rulings that might be made by the District Judge on reconsideration of the motions for new trial. They can, and should be, ruled upon at this time. While the jury was deliberating it sent a message to the judge asking for a dictionary and the judge supplied the dictionary. Counsel for the DeWitt defendants were absent, and when they learned what had occurred they objected.[10] The jury returned with a question, and the court then inquired what word the jury had looked up and found it was the word 'proximate.' The judge repeated his charge defining proximate cause and instructed the jury to use the legal definition and not the dictionary's lay definition. This was sufficient to cure the error. The court did not err in consolidating the DeWitt and Gates cases, in granting a jury trial after a late request by the Webers, in permitting testimony by an expert whose name had not been furnished to the DeWitt defendants in writing, and in permitting the jury to take notes. A jury instruction that the court declined to give at the request of the DeWitt defendants was properly refused. It was substantively erroneous.
 
 
 29
 There is no merit to Gates' theory that because the jury found he was responsible for only 3% of the over-all fault resulting in harm to the Webers, while DeWitt and Mills were responsible for 97%, the court could only enter judgment against him in favor of the Webers for 3% of their damages. The District Court was controlled by the state law concerning apportionment of damages among joint tort-feasors, Ft. Worth & Denver Railway Co. v. Threadgill, 228 F.2d 307 (C.A.5, 1955), and Georgia follows the common law rule of no apportionment (with exceptions not material). Gamble v. Reeves Transportation Co., 126 Ga.App. 161, 190 S.E.2d 95 (1972); Isom v. Schettino, 129 Ga.App. 73, 199 S.E.2d 89 (1973). F.R.Civ.P. 20(a), which provides that judgment may be entered against one or more defendants according to their respective liabilities, concerns joinder of parties and is a procedural rule based on trial convenience. 3A Moore's Federal Practice, § 20.02, p. 2721. It does not affect principles of substantive state law on the basis of which the respective liabilities of the defendants are determined.
 
 
 30
 The court did not err in refusing to charge the jury, at the request of Gates, on Ga. Code Ann. § 68--1636(a)(2). That sub-section relates to a vehicle's overtaking and passing upon the right of another vehicle when the vehicles are moving on a highway that is multi-lane in their direction of travel. The section only applies to a street or highway with 'unobstructed pavement.' Gates overtook and passed the DeWitt truck, traveling to his left, either at the point, or immediately before the point, at which the two lanes merged into a single lane. The court correctly instructed the jury on the duties of the respective vehicles where lanes merge. Also it charged on subsection (b) of § 68--1636, which sets out the general proposition that the one may overtake the pass on the right of another vehicle only under conditions permitting such movement in safety. The more specific subsection (a)(2), limited to multi-lane travel, was not applicable because the point at which, or immediately before, the lanes merged was not 'unobstructed pavement' within the meaning of the subsection.
 
 
 31
 The judgments in favor of Thelma Elizabeth Weber and Carl C. Weber against DeWitt, INA and Mills, and the judgments in favor of Gerald W. Gates against DeWitt, INA and Mills, are vacated and the cause is remanded to the District Court with directions to consider again the motions for new trial of the DeWitt defendants and the post-trial motions of Gates and to enter a fresh judgment in each of the cases.
 
 SIMPSON, Circuit Judge (dissenting):
 
 32
 I respectfully dissent.
 
 
 33
 The trial judge, a Georgia trained trial lawyer of wide experience, has already fully and carefully analyzed and decided the question of Georgia law for which the majority sends the case back to him, with directions to decide it again. See the portion of his order denying the motions for new trial, quoted at page 409, supra, of the majority opinion. He answered the question posed by relying upon the opinion of another Georgia trained judge, a distinguished member of this Court, Judge Robert L. Russell, in a similar situation in the case of Hogan v. Williams, 5 Cir. 1952, 193 F.2d 220. There Judge Russell wrote:
 
 
 34
 'As a claimed error, common to both cases, the appellants strenuously insist that the refusal of the trial judge to give a requested instruction tendered by the appellants to the effect that the jury must not consider the fact that the Fireman's Fund Indemnity Company issued a policy of liability insurance in determining whether the defendant Sherman B. Hogan was negligent. It is conceded, as indeed it must be, that since the Central Truck Lines, Inc., was a motor common carrier operating under a certificate from the Georgia Public Service Commission it was permissible for the insurance company to be sued jointly with the motor carrier as was done in the present case, and, indeed, the Georgia statute permits an action to be maintained against the surety or insurance carrier without joining the motor carrier, although the suit is based on the negligence of the motor carrier. In such cases the policy of insurance is frequently attached as an exhibit to the complaint, as was done in this case. While the idea which prevails that if the existence of insurance in his behalf is before the jury the defendant and the insurance carrier are likely placed in an unfavorable situation may be accepted, in a case such as the present, it is a consequence of the law and the business conducted by the insured.' Ibid 225. (Emphasis added)
 
 
 35
 This case is ready for decision. We should affirm the trial court or reverse it for new trial. The district court has done its best to decide the crucial question, and we should meet our responsibility by deciding the issue raised. I would affirm the judgment appealed from.
 
 
 
 [1]
 Bond; indemnity in lieu of bond; self-insurance.--No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond, with adequate security, . . . for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants or agents. The commission shall approve, determine and fix the amount of such bonds, and shall prescribe the provisions and limitations thereof, and such bonds shall be for the benefit of and subject to suit or action thereon by any person who shall sustain actionable injury or loss protected thereby. The commission may, in its discretion, allow the holder of such certificate to file, in lieu of such bond, a policy of indemnity insurance in some indemnity insurance company authorized to do business in the State of Georgia, which policy must substantially conform to all of the provisions hereof relating to bonds, and must likewise be approved by the commission. . . . It shall be permissible under this Chapter for any person having a cause of action arising hereunder in tort or contract to join in the same suit the motor carrier and its surety in the event a bond is given. If a policy of indemnity insurance is given in lieu of bond, it shall be permissible to join the motor carrier and the insurance carrier in the same action whether arising in tort or contract
 
 
 [2]
 Even if the issue of policy limits was uncontested, it does not necessarily follow that under Georgia law the policy was as a matter of law inadmissible. See Carter v. Ray, 70 Ga.App. 419, 28 S.E.2d 361, 369 (1943), holding that the trial court can permit a plaintiff to introduce proof of an essential element of his case even though the defendant concedes that element in an effort to keep the evidence out
 
 
 [3]
 Rule 43 has been substantially superseded by the federal Rules of Evidence, effective 180 days after Jan. 2, 1975. P.L. 93--595, § 3, Jan. 2, 1975, 88 Stat. 1959, noted at 28 U.S.C.A. § 2071 (Pamph.) Feb. 1975
 
 
 [4]
 This argument, even if accepted, overlooks that the policy still might have been admissible under federal standards. Under Rule 43(a) evidence was admissible in federal court if admissible under either federal law or the state law of the forum
 
 
 [5]
 The total judgments entered against INA exceed $1,000,000. No party makes any point of this on appeal
 
 
 [6]
 Ga. Code Ann. § 81--105:
 'Copies, exhibits, etc., incorporation in or attachment to petition.--Copies of contracts, obligations to pay, or other writings should be incorporated in or attached to the petition in all cases in which they constitute the cause of action, or the relief prayed for must be based thereon. In suits to recover money on an insurance policy it shall be necessary to attach a copy of only what appears upon the face or in the body of the policy. In suits on account a bill of particulars should be attached. In actions for the recovery of land the plaintiff must attach an abstract of his title.'
 This section was repealed in 1966. See 1975 Cum. Pocket Parts.
 
 
 [7]
 Which permits pleading a contract in conclusory terms. 5 Wright & Miller, Federal Practice & Procedure § 1235, p. 191
 
 
 [8]
 Substantially the same argument is made in the form of a contention that the only amount relevant to a § 68--612 suit against the insurer is the amount shown on the certificate filed in lieu of the policy. It fails for essentially the same reasons
 
 
 [9]
 The DeWitt defendants rely upon Dobson v. American Indemnity Co., 227 S.C. 307, 87 S.E.2d 869 (1955). That is a South Carolina case brought under a similar statute in which the court held that the pleadings could refer to only the statutory minimum coverage because any excess was 'private insurance.' Apart from the fact that it is from another state, the decision could have little application in a state where the rules of pleading require that insurance contracts filed pursuant to the statute be pleaded in full. Also, the minimum coverage required by the South Carolina Commission was $5,000, while the Georgia Commission requires 'not less than $25,000/$100,000.'
 
 
 [10]
 Counsel for the other parties either were present or stated later that they had no objection