**FIDELITY & CASUALTY CO. OF NEW YORK v. HEROD.**

No. 12454.

United States Court of Appeals
Fifth Circuit.

Feb. 1, 1949.

P. H. Eager, Jr., of Jackson, Miss., for appellant.

R. L. Smallwood, Jr. and Chester L. Sumners, both of Oxford Miss., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Curtis Herod obtained against Talmadge Ivy a judgment for $5,000 damages for a personal injury inflicted on Aug. 25, 1946, by Ivy in the operation °of a certain automobile. Herod, on return of nulla bona, sued Fidelity and Casualty Company on a policy of insurance by which the latter promised to pay on behalf of Ivy all sums which Ivy should become obligated to pay by reason of liability imposed by law for bodily injury caused by accident arising out of the ownership or use of the automobile. The Company's answer admitted the accident on Aug. 25, 1946, and the recovery of the judgment against Ivy, and that it had issued the policy to Ivy on March 6, 1946, for the period of a year, but alleged that by its terms Ivy had the right to cancel the policy and had on Aug. 20, 1946, done so, delivering it to the local agent at

---

Oxford, Mississippi, who had issued it, for cancellation and return of the unearned premium; that the agent indorsed the cancellation on the policy on Aug. 20, and forwarded it to the Company and it was not of force on Aug. 25. Other details are not material to our decision.

On a trial the Court found the policy was in force on Aug. 25, referring especially to the entries on the policy produced by the Company, and gave judgment on it. The Company appeals.

The policy, according to the evidence, was required to be obtained and carried by Ivy on his obtaining a permit to operate the automobile as a taxicab within the city limits of Oxford, the ordinance requiring it to be deposited with the City Clerk, and the policy containing a rider: "It is hereby understood and agreed that the Company will give notice to the City of Oxford, Mississippi, at least ten days prior to their cancellation of this policy." The City revoked Ivy's permit and took up his badge, which he had to wear in the city, on Aug. 12. Ivy failed to get a restoration, and testifies he went to the local agent and asked him about the money coming back to him, "and he said he would see if he couldn't help me get it back." "The insurance man told me he would have to get the policy and check over it and see." "He sent me to the City Hall to Mr. Fulmer (the City Clerk) and I brought it back and turned it over to Mr. Wilson (the agent)." "Three or four days afterwards I had the wreck." Ivy could fix no dates, but on cross-examination testified the agent said when he handed him the policy he "would see what he could do about it", and some time later Ivy called his attention to it, and the agent gave him forty dollars in cash money. Ivy did not know what became of the policy. There was a personal check of the agent to Ivy introduced dated Aug. 23, 1946, for $17.00 with a notation "bal to return on A 334 A 1010 policy number," but this policy bears a number No. A 334310. The City Clerk testified that after the cancellation of Ivy's permit Ivy asked for the policy, and said "they wanted to cancel it" and the Clerk 'phoned the agent and he verified Ivy's statement, and the Clerk let Ivy have it; that he

noted the date on his record, and it was August 23. No written notice of cancellation was ever given the city. Neither the local agent nor anyone from the home office testified. The policy provides: "This policy may be cancelled by the named assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the named insured at the address shown on the policy written notice stating when not less than 5 days thereafter such cancellation shall be effective." There is no evidence that either Ivy or the Company gave the other any such written notice. The entries on the policy are these:

(Written in ink.) "P/R 8-20-46. 75.80. Agents on Acct. transporting liquor." (Stamped in large letters with blanks filled in ink in another handwriting.) "Cancelled. Date Cancelled 8-20-46. Pro rata BI. 52.70. Sport Rate E. P. S. P. D. 11.50. Reason, Insured Transporting Liquor. Approved by J. F. R. Date 8-28-46. Cancelled. Oct. 14, 1946."

We do not think the interest of the City of Oxford in the policy is controlling. It was required for the protection of patrons of the taxi in the city limits, and Ivy never operated a taxi there after Aug. 12. Whether the City Clerk ought to have kept the policy till he had ten days written notice is also not the question. The injury was not inflicted in the city limits, but on the highway returning from a trip to another town. The policy, while it permits use of the automobile as a taxicab, does not limit its coverage to that use. Ivy could have retained it for his general protection, or he could by the terms of the policy cancel it, having lost his taxi permit, and could recover his unearned premium. If he did this before he hurt Herod, Herod could not complain. The Company had the burden of proving a cancellation before Aug. 25. Ivy could fix no date for anything and got no further than to say the agent said he would see what he could do. The Company, withholding as witnesses its local agent and home officers, attempts to show what was done only by the record entries on the policy, unexplained and unsworn. "P/R 8–20–46" may well mean Permit

Revoked Aug. 20, 1946. It could not be the true date of cancellation for the City Clerk testified from his record that he still had the policy on August 23. The formal entry of cancellation first says the date is 8-20-46, but as above stated that cannot be true, and the cancellation further says, "Approved 8-28-46, Cancelled Oct. 14, 46." If 75.80 in the first entry means $75.80 unearned premium, then the later rate figures 52.70 and 11.50 do not agree, and what Ivy says was paid agrees with none of them. We think the judge was authorized to conclude that it had not been shown that the policy had been finally cancelled before Aug. 25, 1946.

Judgment affirmed.