Helen N. SPICER

v.

**AMERICAN HOME ASSURANCE
COMPANY.**

Judy MINNIS

v.

**AMERICAN HOME ASSURANCE
COMPANY.**

Beverly MINNIS

v.

**AMERICAN HOME ASSURANCE
COMPANY.**

Civ. A. Nos. 9833, 10121, 10122.

United States District Court
N. D. Georgia,
Atlanta Division.

Sept. 27, 1967.

On Motion for Reconsideration
Oct. 23, 1967.

Vaughn & Barksdale, Conyers, Ga., James H. Weeks, Atlanta, Ga., for plaintiffs.

Woodruff, Savell, Lane & Williams, Atlanta, Ga., for defendant.

SIDNEY O. SMITH, Jr., District Judge.

These three cases are before the court on motion for summary judgment filed by the plaintiffs, arising out of the following facts:

On June 30, 1964, one Walker Lucas a resident of Kentucky was employed by Bert Martin, Paul Stewart, and Oscar House doing business as Martin-Stewart House Sales Co. of Haines City, Florida, as a tractor-trailer driver. On said date, while driving the vehicle of his employer in Georgia and within the scope of his employment, he was involved in a multiple truck auto collision with various automobiles in which the plaintiffs here were riding.

At the time of the collision, defendant's Insurance Policy No. AC2203079, a liability policy with limits of 25,000/100,000 was in full force and effect in favor of Lucas and his employer.

Inasmuch as the employer was qualified as a nonresident motor common carrier authorized to do business in Georgia, the same policy was on file with the Georgia Public Service Commission with the necessary riders and endorsements to comply with the bond and/or indemnity provisions affecting common carriers under Georgia Code § 68–612, which provides:

"Bond; indemnity in lieu of bond; self-insurance. No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond, with adequate security, for the protection, in case of passenger vehicles, of the passengers and baggage carried, and of the public against injury proximately caused by the negligence of such motor common carrier, its servants or agents; and in cases of vehicles transporting freight, to secure the owner or person entitled to recover therefor against loss or damage to such freight for which the motor common carrier may be legally liable; and for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants or agents. The Commission shall approve, determine and fix the amount of such bonds, and shall prescribe the provisions and limitations thereof, and such bonds shall be for the benefit of and subject to suit or action thereon by any person who shall sustain actionable injury or loss protected thereby. The Commission may, in its discretion, allow the holder of such certificate to file, in lieu of such bond a policy of indemnity insurance in some indemnity insurance company authorized to do business in the State of Georgia, which policy must substantially conform to all of the provisions hereof relating to bonds, and must likewise be approved by the Commission. The Commission shall have power to permit self-insurance in lieu of a bond or policy of indemnity insurance, whenever, in its opinion, the financial ability of the motor carrier so warrants. It shall be permissible under this Chapter for any person having a cause of action arising hereunder in tort or contract, to join in the same suit the motor carrier and its surety, in the event a bond is given. If a policy of indemnity insurance is given in lieu of bond, it shall be permissible to join the motor carrier and the insurance carrier in the same action whether arising in tort or contract."

The accident in question was investigated by the insurance company but no

settlement could be effected between them and plaintiffs here.

In April, 1965, damage suits on behalf of each plaintiff were filed in state court. Notwithstanding the provisions for service on nonresident common carriers through the Secretary of State (Georgia Code § 68–618), the suits were filed against Lucas alone and he was served through the "non-resident motorists act" (Georgia Code § 68–801 et seq.) likewise through the Secretary of State.

The defendant insurance company was notified through its adjuster of the filing of said suits. However, the company denied coverage on the grounds that the insured, and its agent, Lucas, had breached the notice and cooperation clauses of its policy. As a result, the three state suits were not answered and went into default.

Subsequently, the "default" cases came on for trial before the state courts. In accordance with the Georgia practice, evidence was submitted to the jury on the question of damages only, resulting in verdicts against Lucas and in favor of Helen Spicer for $15,000; in favor of Judy Minnis for $12,500; and in favor of Beverly Minnis for $7,500. At such time, the company was notified of the judgments and the insurance filing under Code § 68–612, but no satisfaction followed.

These three suits were then filed in district court in behalf of the three judgment creditors and against the insurance company on the theory that under the Georgia statute (Code 68–612) there was absolute liability for the unsatisfied judgments, irrespective of the policy conditions or any breach thereof by Lucas or any other insured. Concurrently, they likewise seek attorneys fees for "unnecessary trouble and expense" under Georgia Code § 20–1404.[1]

Upon establishment of these facts, the plaintiffs move for summary judgment. On the other hand, the defendant insists that its liability, if any, is predicated on the policy alone which it still contends has been breached in several vital aspects by Lucas and the named insured.

The problem presented by these motions presents a troublesome and vexing question. Basically, the plaintiffs contend that they are entitled to recover against the insurance company by virtue of the provisions of the "indemnity" statute, i. e. Code § 68–612. Conversely, the defendant contends that the state suits were not filed under that section, that there were no allegations of agency against the motor carrier, but that they were straight damage suits against Lucas in which service was perfected under an entirely different provision of law. Consequently, it insists that its liability, if any, is under the insurance policy only and not under the provisions of § 68–612. There being a breach of that policy, it further insists that there is no liability at all. If the plaintiffs' motions fail, then, of course, the defendant is entitled, at the least, to a jury trial on the issue of breach of its policy by Lucas, as an additional insured thereunder.

■ No case is presented which answers the question directly, and a careful search of available material from other jurisdictions likewise fails to uncover specific authority. Actually, there is considerable logic to both positions here. Any decision must necessarily begin with an analysis of § 68–612. The validity of bond/indemnity requirements is beyond question. Acme Freight Lines v. Blackmon, 131 F.2d 62 (5th Cir. 1942). "The primary purpose of requiring a bond, policy of insurance, or other security as a condition to the operation of public service motor vehicles for hire is for the protection of the public, by assuring those who are injured, in person

---

1. Which provides: Expenses of litigation.—The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

or property, through the negligent operation of such vehicles, compensation for the injuries or damages sustained." 60 C.J.S. Motor Vehicles § 111(b). Further, "under the bond or policy, the public has statutory rights which cannot be impaired by stipulations between the immediate parties to the security contract. As between insurer and insured, the insurer's liability is contractual, and depending on the terms of the bond or policy, is either against loss, or against liability." 60 C.J.S. Motor Vehicles § 113(c) (2). "The security bond or policy ordinarily covers only injuries or damages which result from the careless, negligent, or improper operation of the motor carrier's vehicles." 60 C.J.S. Motor Vehicles § 115(c) (1). "The liability of the surety or insurer is joint and several with the liability of the owner or operator of the motor vehicle." 60 C.J.S. Motor Vehicles § 116(b). And, finally, "where the statutory regulation requiring the security bond or policy of liability insurance provides that it shall be conditioned for payment directly to the injured person—or that such person shall have his right of action on the bond or policy, such provisions should be construed as part of the policy, and gives to the person so injured an original independent right of action to recover directly from the surety or insurer on the bond or policy *regardless of insured's concurrent breach of the bond or policy.*" 60 C.J.S. Motor Vehicles § 117(a).

██ The Georgia statute follows these general rules of construction. Thus in spite of the use of the phrase "indemnity insurance", it refers to a direct liability policy rather than indemnity in the true sense. Great American Indemnity Co. v. Vickers, 53 Ga.App. 101, 185 S.E. 150 (1936). And it is clear that the obligations of the statute itself clearly supersede any policy provision. Great American Indemnity Co. v. Durham, 54 Ga.App. 353, 187 S.E. 891 (1936); American Casualty Company v. Southern Stages, Inc., 70 Ga.App. 22, 27 S.E.2d 227 (1943). Under the Georgia statute, the beneficiaries of the provisions are "passengers" and "the public against injuries proximately caused by the negligence of such motor common carrier, its servants or agents" and "any person who shall sustain actionable injury or loss protected thereby." "Actionable injury" means an injury to a person who could sue the carrier and obtain a judgment for the injuries sustained. Combs v. Carolina Casualty Insurance Co., 90 Ga.App. 90 at 92, 82 S.E. 2d 32 (1954); Laster v. Maryland Casualty Co., 46 Ga.App. 620, 168 S.E. 128 (1933). Such definition by its nature broadly includes all third-parties injured by the negligence of the motor carrier, or by the negligence of its servants, and necessarily excludes employees of the carrier who could not sue the employer. Combs v. Carolina Casualty Insurance Co., supra; Robbins v. Liberty Mutual Insurance Company, 113 Ga.App. 393, 148 S.E.2d 172 (1966). Likewise, if the motor carrier could not be liable because of a failure of agency of a particular employee in the accident in question, the insurance company may be protected thereby. American Fidelity and Casualty Company v. McWilliams, 55 Ga.App. 658, 191 S.E. 191 (1937). In other words, these suits could have been defended on the failure of Lucas' agency to the insured, but there is no question here about such fact.

██ From the above, it is clear that the plaintiffs are among the class for whose benefit the statute is passed and the policy filed. In an original action against either the carrier or the insurance company with the same results the defendant's liability would be absolute. However, the question is whether the result is any different in a suit against the agent alone. It is apparent that a driver-agent may be a party to such a suit. Tarrant v. Davis, 62 Ga.App. 880, 10 S.E.2d 636 (1940); Pilot Freight Carriers, Inc. v. Parks, 80 Ga.App. 137, 55 S.E.2d 746 (1949); Hogan v. Williams, 193 F.2d 220 (5th Cir. 1951). Pertinent to the issue of whether the

driver-agent may be the *only* party is the language of Tarrant, 62 Ga.App. at 884, 885, 10 S.E.2d at 638:

"The present action was for alleged negligence of the driver of the motor vehicle. Plaintiff could have sued the driver alone, or the motor carrier alone, or she could have sued them jointly. She could have sued the insurance carrier alone or as authorized by the act she could have joined the motor carrier and the insurance carrier in the same action, irrespectively whether it sounded in tort or in contract. The negligence relied on in each of the actions would have been the negligence of the driver of the motor vehicle. The driver himself was liable because of his own negligence. The motor carrier was liable because of the doctrine of respondeat superior. The insurance carrier was liable because it assumed by contract a liability for the negligence either of the motor carrier or of the agent or driver. Unless a cause of action is made out against the driver under the allegations as here made, there can be no recovery against any one. As stated above, the motor carrier is liable under the doctrine of respondeat superior. See Southern Railway Co. v. Harbin, 135 Ga. 122, 68 S.E. 1103, 30 L.R.A.,N.S., 404, 21 Ann.Cas. 1011; Davenport v. Waters, 40 Ga.App. 99, 148 S.E. 772. The bond or policy required protects the public against the negligence of such driver. The negligence of the motor carrier is derivative from the negligence of the driver or agent. A judgment in favor of the driver, in the event he were sued alone, may be pleaded in bar to any subsequent action brought against the motor carrier or its surety or against them jointly. See Roadway Express Co. v. McBroom, 61 Ga.App. 223, 6 S.E.2d 460, decided December 4, 1939. In view of the fact that in this case there can be no recovery against the motor carrier or its surety except upon proof of the negligence of the driver, Duhart, and because the policy given by the insurance carrier is expressly designed to cover acts of negligence of the operator of the motor vehicle, and because the negligence of the motor carrier is itself derivative, we think it was the clear intent of the legislature not to exclude such driver from being joined in suits which also named the surety or insurance carrier as a party defendant. While the Act does not expressly name the driver or agent as one who may be joined in such action, we think it would do violence to the spirit of the Act to hold that he may not be joined, or that the surety or insurance carrier may not be joined because the driver is joined. The driver under the facts alleged here is in privity with the motor carrier and as such may be joined in any action brought against the motor carrier, even though its surety or insurance carrier be joined therein, also if a separate action may be maintained against the insurance carrier based on the negligence of the driver, we fail to see why such driver may not be made a party defendant, the same as the motor carrier. We hold that such was the legislative intent."

■ It is apparent then that all three parties—the driver, the carrier, and the insurance company—may be joined and the inference is clear that any *one* of such parties may be sued alone and thereby bind the company for payment of the eventual judgment as is the case here. Such a conclusion is strengthened by the public policy expressed by the Georgia Supreme Court. "According to the language and patent intendment of the statute the bonds provided for therein are solely for the benefit of those persons who by reason of the negligence of the carrier, its agents or servants, may have a cause of action for damages * * the policy of insurance is not one of indemnity against loss as that term is generally understood; but is a direct and primary obligation to any person who shall sustain actionable injury or loss by reason of the negligence of the

insured in the operation of his motor vehicles insured under the policy. *The sustaining of actionable injury is, under the statute, the only condition precedent to a suit on the policy.*" (Emphasis supplied). Great American Indemnity Co. v. Vickers, 183 Ga. 233 at 236, 188 S.E. 24 at 26 (1936).

Nor would the fact that Lucas was served under the "non-resident motorists" act change this result. Such procedural choice of service of process would not affect the substantive rights involved. This is demonstrated by a comparison of the effect of an opposite verdict in state court with the result here. If Lucas individually had prevailed in the state suits, the present suits against the carrier and insurance company would be barred. This follows because of the necessary dependency of their liability on the acts of the agent-driver. Such a finding was made even on a suit from a foreign jurisdiction wherein a judgment was granted against the third-party claimant and in favor of the driver-agent. Of course, there was no special mode of service there. Roadway Express, Inc. v. McBroom, 61 Ga. App. 223, 6 S.E.2d 460 (1939).

Defendants insist there was some sort of "election of remedies" by the plaintiffs in filing the suit against Lucas alone. It has previously been ruled that the joinder of the insurance company is not mandatory, but only "permissible" under the terms of the statute itself (June 16, 1966). See also Bolin v. Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co., 92 Ga.App. 726, 89 S.E.2d 831 (1955). Furthermore, to invoke a true "election of remedies" the previous action must be inconsistent with the present one. 28 C.J.S. Election of Remedies § 1 ff. As seen by *Tarrant*, a

suit against the driver-agent alone is entirely consistent with a claim on the policy. Thus, a claim of liability there is not a repudiation of a claim of liability here. See Moon v. Price, 213 F.2d 794 (5th Cir. 1954). Nor would the technical mode of attack, such as service of process, change the substantive facts out of which the claim arises. E.g. City of Cartersville v. Long, 105 Ga.App. 762(2), 125 S.E.2d 539 (1962).

Accordingly, insofar as the cases here are concerned, it is concluded that the defendant is bound by the state actions against the driver-agent alone; that it was not necessary for the motor carrier or the insurance company to be parties to such suit; that failure to serve process in that case under the nonresident carriers act does not change the cause of action so as to bar this suit; and that, under the Georgia statute, a breach of the policy conditions between the insured and the company, may not defeat the public third-parties claims, when there is actual notice to the company of the suits. Implicit in this holding is the further conclusion that there has been no "election of remedies" by the plaintiffs. Accordingly, the plaintiffs are entitled to summary judgment for the respective amounts of their state awards.[2]

There remains the claim for attorneys' fees in these federal suits. Unlike the "bad faith" claims under the insurance code (§ 56–1206), which are available only as between insureds and their insurors, plaintiffs claim attorneys' fees under the general provisions of Georgia Code 20–1404 (See N 1, supra).

Apparently relying on that part of the section which allows attorneys' fees if the defendant has caused the plaintiff "unnecessary trouble and ex-

---

**2.** A similar conclusion was reached in West Virginia in a contest between the insured and the company over liability for a public third party's claim. There, a breach of policy notice conditions was held to apply only in a contest between the contracting parties. "By virtue of the West Virginia indorsement on the policy, the (company) was responsible to the injured passenger if the (carrier) caused her injury, regardless of the breach of the policy by the (carrier)." Black & White Cab Co. v. New York Indemnity Co., 108 W.Va. 93, 150 S.E. 521 (1929); American Fidelity & Casualty Co. v. Big Four Taxi Co., 111 W. Va. 462, 163 S.E. 40 (1932).

pense", the same are sought here. Generally, such provision can apply to suits in both contract and tort. See Parks v. Parks, 89 Ga.App. 725, 80 S.E.2d 837 (1954). However, there is considerable doubt in the court's mind as to whether the bond/indemnity provisions of § 68–612 would cover more than actual damages. For example, liability would probably not extend to punitive damages in such a case. See Ford v. Glens Falls Indemnity Co., 80 F.Supp. 347 (E.D.S.C. 1948). Attorneys fees would logically fall into the same classification as being uncollectible from the company. Whatever the ruling on attorneys fees as a matter of law, in this case it is extremely doubtful as a matter of fact whether a recovery therefor could be allowed. The complexity of the legal question itself negates any finding that the defendant "has been stubbornly litigious" or has caused "unnecessary trouble and expense." Were a motion for summary judgment on this issue before the court it would unhesitatively be granted on the basis of the present record. However, such question is not now procedurally present. In view of this situation, if such claims are waived or disavowed by plaintiffs in these suits, final judgments may now issue. Otherwise, final disposition of these cases must await further direction.

It is so ordered.

### On Motion for Reconsideration

In a well-considered brief, the defendant has moved for reconsideration of the court's prior opinion granting plaintiffs a summary judgment. While the motion points up the arguments of defendant against liability, the considerations are the same as those previously before the court.

As stated, defendant's position is that its only liability is under the policy toward Lucas as an additional insured. The pleadings clearly defend on Lucas' failure of the notice and cooperation clauses of the contract. Perhaps mistakenly the court referred to breach of such clauses by the "insured and Lucas." But whether such breach was by Martin-Stewart House Sales Company as named insured or Lucas as an unnamed additional insured, or by both, the result is the same. It is obvious from the pleadings that the defendant had knowledge of the proceedings as it "made various attempts to obtain the cooperation of Lucas" "subsequent to the filing of the suit and prior to judgment."

The rationale of the holding is that no such breach can overcome the public policy considerations of the statutory filing. It is the court's belief that the purposes of the statute are to protect the members of the public who are injured by the operation of the common carrier's vehicles and the insurance contract may not defeat this public policy by conditions to which the state and public are not a party. This is a prerequisite to doing business in Georgia and on its highways either directly or by agent employees.

If Beet Andrew Martin personally had been driving the vehicle in question, had been sued individually, served under the "non-resident motorists act", and judgment followed against him, the result would be the same. The case turns on the question of whether the motor carrier *must* be joined in the damage suits to render the company liable. Defendant concedes that it would be an absolute insuror under such circumstances (Brief, p. 9). What is held is that the Georgia law permits a suit against the motor carrier's agent alone and the liability is the same.

As stated, these suits present a difficult question of law. No specific authority is found to answer the question either way, and the court's conclusion was based upon an examination of the available decisions construing the statute. Code § 68–612. For the reasons stated, the decision is adhered to and the motion for reconsideration is denied.

Concurrently, the plaintiffs have moved for a judgment on the pleadings as to their claims for attorneys fees. As ruled earlier, it is not a clear *legal* certainty that plaintiffs are or are not entitled to attorneys fees under Georgia Code § 20–1404. "Legal certainty" is the

test either way under Rule 12. The court has stated that it is a *factual* probability that they are not recoverable. Based on the record before the court at this time, a summary judgment would be granted to defendant on this issue.

Rule 12(c) provides that a motion for judgment on the pleadings may be converted into a motion for summary judgment by the presentation of matters to the court outside the pleadings. There is no factual dispute as to what has transpired in this litigation or the basis of the defense by defendant. Considering the motion in that posture, summary judgment as to attorneys fees is granted to defendant; subject, however, to the right of either party to present such additional evidence on the question as may be desired within 15 days. Failing such action within 15 days, summary judgment on the main issue is granted plaintiff and summary judgment on the issue of attorneys fees is granted defendant and final judgment in these cases may issue accordingly.

It is so ordered.