**Lois T. HUSE, Erle S. Huse, and Mats Sparrstrom, Plaintiffs-Appellees,**

v.

**Don Lee FULTON, et al., Defendants,**

**Atlanta Metro Taxicab Group, Inc., Movant-Appellant.**

No. 81–7306.

United States Court of Appeals, Eleventh Circuit.

June 7, 1982.

I. J. Parkerson, Parkerson & Shelfer, Decatur, Ga., for defendants.

H. Sanders Carter, Jr., Carter, Ansley, Smith & McLendon, Atlanta, Ga., for plaintiffs-appellees.

Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN *, District Judge.

KRAVITCH, Circuit Judge:

This appeal arises from a district court order rejecting an affidavit of illegality filed by Atlanta Metro Taxicab Group, Inc., [Atlanta Metro] to contest an execution and levy against a monetary bond held by the City of Atlanta. Atlanta Metro asserts that the trial court erred in holding that the bond was subject to levy under the facts presented in this case. We disagree with Atlanta Metro's arguments and affirm.

## I. Background

In 1977, the Atlanta City Council passed, and the mayor approved, an ordinance regulating vehicles for hire. 1977 Code of Ordinances of the City of Atlanta, part 14, ch. 8. Section 14–8055, entitled "bond, public liability insurance or collateral of taxicab permit holders," mandated that "[n]o permit to operate taxicabs shall be issued or continued in operation unless the holder thereof shall:" (1) file a policy of indemnity insurance with the commissioner of finance with policy limits equal to or in excess of certain amounts; (2) post with the commissioner of finance cash or securities of the value of $55,000, or (3) post cash or collateral in the amount of $25,000 along with a policy of indemnity insurance with specified lower minimum limits. The ordinance provided that the insurance policies filed thereunder "shall be conditioned to protect the public against injury or damage proximately caused by the negligence of the holder of the permit." Subsection (c) of section 14–8055 provided that "[t]he Atlanta Car-for-Hire Association, Inc., and other similar organizations are authorized to post collateral in substantially the form prescribed herein, which shall be sufficient compliance by the members of the association . . . ." Subsection (e) required that the Commissioner of Finance retain the collateral for a minimum of two years after the termination of the business of a taxicab company or active status of a bond.

On November 24, 1978, the Mayor of Atlanta approved an ordinance amending the provisions of the City Code pertaining to vehicles for hire. Former section 14–8055 was repealed, and in its place new section 14–8058 provided that taxicab companies "shall maintain insurance coverage for all taxicabs in its fleet, according to current requirements of the State of Georgia." Under section 14–8060 of the new ordinance, taxicab companies were required to affix a

* The Honorable Virgil Pittman, U. S. District Judge for the Southern District of Alabama,    sitting by designation.

decal each month to every taxicab in their fleets for the purpose of proof of insurance. The ordinance provided that a taxicab company which affixed a sticker with knowledge that the car was not insured was subject to a fine of $500.00 per car, and a driver who operated a car without a current insurance sticker was subject to a mandatory one year revocation of his or her permit. This ordinance gave taxicab companies ninety days to comply with the new insurance requirements and also directed the Department of Finance to retain all posted cash bonds for a period of twenty-five months after the effective date of the new ordinance.

Franklin Cab Company, one of the defendants in this case, had been associated with the Atlanta Car-for-Hire self-insurance group until January 19, 1978. On that date Car-for-Hire wrote the Atlanta Bureau of Police Services informing the city that it was dropping Franklin Cab from its insurance pool. The city immediately began proceedings to revoke Franklin's taxicab license due to its failure to comply with its insurance requirements. Mr. Melvin Giles, the owner of Franklin, was directed by the city to show cause why his taxicab license should not be permanently revoked, but the day before the show-cause hearing Atlanta Metro wrote the city to advise that "Franklin Cab Company is operating under the authority of Atlanta Metro Taxicab Group for the purpose of insurance until further notice." As a result of this information, Franklin was permitted to keep its taxicab license.

On February 8, 1979, a Franklin cab ran a red light and was struck by another vehicle. The cab's passengers, Mats Sparrstrom and Lois and Erle Huse, were injured. On February 20, 1979, the passengers' attorney telephoned Atlanta Metro and advised Richard Hewatt, the vice-president of the corporation, of the accident and the intent to file suit. On February 23, another attorney advised Atlanta Metro of the accident and injuries sustained by the passengers. On both occasions, Atlanta Metro denied liability. On March 6, 1979, Atlanta Metro informed the Atlanta Permit Board that it was dropping Franklin Cab from its self-insurance pool.

The injured passengers filed suit against Franklin and received judgments totalling $170,000. Writs of execution were issued and the passengers requested levy on Atlanta Metro's bond posted under the 1977 ordinance. Atlanta Metro filed an affidavit of illegality, alleging that the bond posted was not available to satisfy claims arising during the 90-day compliance period authorized in the new (1978) taxicab ordinance. Atlanta Metro also contended that the vehicle in which the passengers were injured was not listed by Franklin as one of its cabs on the self-insurance certificate, and therefore was not insured; and that Atlanta Metro failed to receive proper notice of the court suit, so that the jury determinations in that suit were not binding on Atlanta Metro. The district court overruled the illegality and this appeal followed.

## II. The 1977 Bond and the 1978 Ordinance

As noted above, the 1978 taxicab insurance ordinance eliminated the bond system of the 1977 ordinance, replacing it with a requirement that each cab be insured according to the provisions of the Georgia Motor Vehicle Code. The 1978 ordinance allowed operators 90 days to comply with the new insurance requirements and ordered that the bonds placed with the city under the 1977 ordinance be retained for 25 months after the effective date of the new ordinance. The 1978 ordinance, however, failed to explicitly provide for liability incurred during the 90-day grace period. Atlanta Metro urges that the bonds do not cover the 90-day grace period, noting that the 1978 ordinance explicitly repealed the 1977 ordinance in toto.[1] The insurance

---

1. Atlanta Metro also urges that the bond cannot be subject to appellees' claims even if it otherwise would be available for claims arising during the 90-day grace period against operators who had not yet complied with the new ordinance because it had fully complied with the 1978 ordinance prior to the accident. This argument, however, overlooks the fact that the

group asserts that the retention of bonds posted under the 1977 ordinance was meant only to provide a fund for claims arising prior to the effective date of the new ordinance. Appellees, on the other hand, assert that the bonds are available to satisfy claims arising during the grace period.

After reviewing the ordinances and record, we conclude that Atlanta Metro's proposed interpretation of the 1978 ordinance must be rejected in favor of the interpretation urged by appellees. Atlanta Metro's position would have permitted taxicab companies 90 days during which they could operate without insurance, a result contrary both to public policy and the manifest intent of the Atlanta City Council in revising the insurance ordinance. As the district court noted, the 1978 ordinance provided for stricter regulation of taxicab operations than did the 1977 ordinance, especially in relation to insurance provisions. The new ordinance, for example, required taxicab companies to affix a proof of insurance decal to every cab in their fleets each month. Failure to comply with the insurance requirements subjected a company to an immediate cease and desist order, and a driver who operated a car without a current insurance sticker received a mandatory one-year revocation of his permit. We find these strict provisions inconsistent with a reading of the ordinance that would permit a 90-day "gap" in taxicab insurance coverage and consequently we hold that the bond in question was available to satisfy claims arising during the compliance period.[2]

### III. Breach of Insurance Contract

[3] Atlanta Metro contends that even if the bond is available to satisfy claims aris-ing from the 90-day compliance period, it cannot be liable in this case because the taxicab involved in the accident was not listed by Franklin on its schedule of insured cabs and also because the driver was not licensed. As the trial court noted, this argument essentially is that by failing to list the cab and permitting an unlicensed driver to operate it, Franklin breached its "insurance contract"[3] with Atlanta Metro and this breach provides a complete defense to liability.

We disagree. In *Spicer v. American Home Insurance Co.,* 292 F.Supp. 27 (N.D. Ga.1967), *aff'd,* 402 F.2d 988 (5th Cir. 1968), *cert. denied,* 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969), a tractor-trailer had been involved in a multiple-vehicle collision. The trailer company had in force an insurance contract which was required by Georgia statute as a condition precedent to authorization to do business in the state. This statute also stated that the insurance coverage was "for the protection of the public against injuries proximately caused by the negligence of [the insured] motor carrier . . . ."

When several persons injured in the collision sued the trailer company, the insurance carrier denied liability on the ground that the insured had breached its duty of notice and cooperation under the insurance policy. The plaintiffs argued that in light of the Georgia Code provision requiring insurance for the protection of the public as a prerequisite to doing business in the state of Georgia, the claim of breach between the insured and insuror could not bar the recov-

---

1978 ordinance required a cab company to obtain insurance for *every cab in its fleet,* which, inasmuch as one cab was uninsured, Franklin Cab had failed to do. Franklin, therefore, was not yet in compliance with the 1978 ordinance at the time of the accident and any claim against it could be satisfied only by the 1977 insurance arrangement.

2. Mr. Robert Hamer, the designee of the Commissioner of Finance who was in charge of the bond at issue here, also was of the opinion that the bond was available to satisfy appellees' claims. While not binding on this court, Mr. Hamer's opinion is additional authority to sup-port our conclusion that the bond was subject to levy. We note, moreover, that our interpretation is consistent with the direction in the 1978 ordinance that the Commissioner of Finance retain any bonds posted under the 1977 ordinance for *at least* 25 months after the new ordinance's effective date.

3. As the trial court noted in its order, the only evidence in the record concerning this contract was Atlanta Metro's letter to the Commissioner of Finance in January, 1978, stating that Franklin Cab was operating under Atlanta Metro's self-insurance pool until further notice.

ery of innocent third parties under the contract. The district court agreed with the plaintiffs, observing that "the obligations of the statute itself clearly supersede any policy provision" and that the plaintiffs were among the class for whose benefit the statute was passed and insurance policy obtained. On appeal the Fifth Circuit affirmed adopting the district court opinion and characterizing the reasoning as "unassailable." 402 F.2d at 988. *See Young v. Allstate Insurance Co.*, 248 Ga. 350, 282 S.E.2d 115 (1981) (insured's failure to give notice of suit to insuror was not a defense to suit by injured third party).

We find the reasoning in *Spicer* controlling in this case.[4] As in *Spicer*, the city ordinances in question here were enacted specifically for the protection of Atlanta taxicab passengers. The 1977 ordinance, for example, specifically required insurance policies to be "conditioned to protect the public against injury or damage proximately caused by the holder of the permit." Obtaining and keeping an operator's permit was conditioned on satisfying the insurance requirements and severe penalties attached to violations of these requirements. The appellees here, moreover, were members of the class for whose benefit the ordinance was passed. Accepting Atlanta Metro's defense, as the trial court noted, would thwart the purpose of the statute by permitting the insuror to raise as defenses conditions under the contract whose performance was "entirely outside the ability of the injured public to secure." Finally, we note that the

city relied principally on Atlanta Metro's blanket representation of insurance in its decision to permit Franklin to retain its taxicab license. We hold, therefore, that the defenses Atlanta Metro might assert against Franklin do not defeat appellees' claim to the bond.[5]

**IV. The Binding Effect of the Judgment**

Atlanta Metro also asserts that it is not bound by the judgment in this case because it failed to receive "official" written notice of the proceedings. The record, however, reveals that Atlanta Metro received *actual* notice of the suit from appellees' attorneys and chose to rest on its assertion that it was not liable for the accident rather than defend the suit. Under the circumstances we can perceive only a single basis for Atlanta Metro's claim: that the failure to receive written notice of the pending litigation constituted a breach of the insurance "contract" between Atlanta Metro and Franklin which provided Atlanta Metro with a defense to appellees' claims. We have already held above, however, that such a breach cannot bar the claims of the appellees in this case. The Georgia Supreme Court, moreover, specifically held in a recent case that when insurance is compulsory, the failure of the insured to give notice of the suit to the insurance company does not bar the claims of injured third parties, even if the failure of notice results in a default judgment. *Young v. Allstate Insurance Co.*, 248 Ga. 350, 282 S.E.2d 115 (1981). *See Spicer v. American Home In-*

---

**4.** Two other former Fifth Circuit cases dealing with taxicab insurance are distinguishable. In *Fidelity & Casualty Co. of New York v. Herod*, 171 F.2d 969 (5th Cir. 1949), the plaintiff-appellee was injured by an automobile driven by the defendant and used part-time as a taxicab. The appellee sued the insurance company on a liability policy that the defendant had obtained as a prerequisite to receiving a taxicab license in the City of Oxford, Mississippi and the insurance company defended on the ground that it had cancelled the policy prior to the accident. The court held for the insurance company despite the fact it had failed to notify the city of the cancellation as required by the policy. The court observed that the defendant had had his taxicab license revoked on August 12, eight days prior to the policy cancellation and thirteen days prior to the accident at issue. It

noted, moreover, that the appellee was not an injured taxicab passenger. Accordingly, the court concluded that under the facts presented "the interest of the City of Oxford in the policy [was not] controlling." *Id.* at 979.

Similarly, in *Hague v. Liberty Mutual Ins. Co.*, 571 F.2d 262 (5th Cir. 1978), another case dealing with Mississippi law, the court concluded as a matter of statutory construction that the defendant taxicab company was not subject to the provision of Mississippi law which prohibited an insurance company from asserting a breach between it and the insured as a defense to an action by an injured third party.

**5.** Atlanta Metro, of course, may pursue its remedies against Franklin Cab.

*surance Co.*, 292 F.Supp. 27 (N.D.Ga.1967), *aff'd.*, 402 F.2d 988 (5th Cir. 1968), *cert. denied*, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969) (failure to join insurance company in action against driver of trailer-truck did not bar recovery on insurance policy when company had actual knowledge of the suit and chose not to defend); *Liberty Mutual Insurance Co. v. Coburn*, 129 Ga.App. 520, 200 S.E.2d 146 (1973) (same). Accordingly, we find no merit to appellant's "lack of notice" argument.[6]

### V. The Amount of Recovery

■ Atlanta Metro's final argument is that if the bond is subject at all to levy, appellees may claim not more than $50,000 of the bond and none of the accrued interest. Atlanta Metro bases this argument on the fact that the 1977 ordinance required a taxicab company either to have an insurance policy with minimum coverages of $25,000 per person and $50,000 per incident for bodily injury and $5,000 for property damage, or else to post a $55,000 bond. According to Atlanta Metro, the division applicable to the insurance coverage should also govern the bond—that is, only $50,000 of the bond should be available for appellees' personal injury claims, because only $50,000 would have been available for these claims had Atlanta Metro chosen to obtain the minimum insurance coverage rather than post the bond.

We cannot agree for two reasons. First, nothing in the 1977 ordinance limits the amount of bond available to satisfy particular types of claims. Although the amount of bond required, $55,000, is equal to the $50,000 single incident bodily injury insurance requirement plus the $5,000 property damage insurance requirement, the Atlanta City Council apparently chose not to place any explicit restrictions on the use of the bond for various claims. More importantly, the 1977 ordinance specifically directed the City Commissioner of Finance to deliver to the officer authorized to collect the judgment "sufficient cash or other property deposited as collateral" to satisfy the judgment, without any specific limitation on amount or use of interest. This statement provides evidence that the city council intended for the full current value of whatever was deposited to meet the bond requirements, including interest, to be available to satisfy any claim against it. Accordingly, the order of the district court is affirmed.

AFFIRMED.

---

**6.** At oral argument counsel for Atlanta Metro repeatedly emphasized that the driver of the cab was a "bootlegger" who was operating the cab without permission. In holding Franklin Cab liable for the injuries to appellees, how-ever, the jury necessarily found that the driver was acting under the authority of Franklin Cab. The time for Atlanta Metro to have asserted its "bootlegger" argument was at trial, not before this court.